CHAUNCEY E. MITCHELL v. ALEXANDER R. BECK.

*Statute of frauds—Promise to pay debt of another—Principal and agent—Conduct of counsel—Charge to jury.*

1. The language of plaintiff's counsel in closing the case to the jury (see foot-note p. 346) is held not to have been such a departure from appropriate argument as to call for a reversal of the judgment.[1]

2. Where the performance of the work sued for and its value are undisputed, and the controversy is whether the defendant originally agreed to pay for the labor, or *verbally* agreed to become security up to a certain sum for third parties, at whose mill it was performed, the plaintiff, if entitled to a verdict, should recover the full amount of his claim.

Error to Cheboygan. (Ramsdell, J.) Argued October 16, 1891. Decided November 13, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*McKnight, Humphrey & Grant,* for appellant, contended:

1. The remarks of plaintiff's counsel in his closing argument, to which exceptions were taken, were intended to, and no doubt did, prejudice the jury against the defendant's position and case. The assertion by an attorney that, because the defend-

---

[1] See, as bearing upon this question, the following cases: *Seligman v. Ten Eyck Estate*, 60 Mich. 269; *Donovan v. Richmond*, 61 Id. 467; *Mayo v. Wright*, 63 Id. 32; *Novock v. Railroad Co.*, Id. 121; *People v. McDowell*, Id. 230, 237; *Battishill v. Humphreys*, 64 Id. 514; *Manufacturing Co. v. Car Co.*, 65 Id. 564; *Bedford v. Penney*, Id. 667, 669; *Miner v. Lorman*, 66 Id. 532; *Amperse v. Fleckenstein*, 67 Id. 247; *Hitchcock v. Moore*, 70 Id. 116; *People v. Montague*, 71 Id. 448; *O'Callaghan v. Boeing*, 72 Id. 669, 674; *Fosdick v. Van Arsdale*, 74 Id. 302; *Bronson v. Leach*, Id. 714; *Laughlin v. Railway Co.*, 80 Id. 154; *Morton v. Railroad Co.*, 81 Id. 423, 437; *Carter v. Hill*, Id. 275, 280; *Dikeman v. Arnold*, 83 Id. 218; *Hirshfield v. Waldron*, Id. 116, *McDuff v. Journal Co.*, 84 Id. 2, 11; *Sweet v. Railroad Co.*, 87 Id. 559; *DeLong v. Booming Co.*, 88 Id. 282.

ant asks the protection of the statute passed to prevent frauds and perjuries, he is "crawling out of his promise," is unprofessional, and injurious, not only to the defendant in this case, but was an encouragement to all who heard it to disregard those laws which did not suit them. Had the argument been made to this Court no harm would have been done, but it was addressed to a jury,—men who, as we have a right to presume, had not investigated the subject, and who might easily have been prejudiced by such remarks; citing *Cronkhite v. Dickerson*, 51 Mich. 179; *Rickabus v. Gott*, Id. 228; *Hollywood v. Reed*, 57 Id. 238; *Bulen v. Granger*, 58 Id. 276; *Bedford v. Penny*, Id. 428; *Miner v. Lorman*, 66 Id. 532; *Hitchcock v. Moore*, 70 Id. 116; *Carter v. Hill*, 81 Id. 280; *McDuff v. Journal Co.*, 84 Id. 11.

2. In support of the claim that the case should have been taken from the jury, defendant's promise, as shown by plaintiff's testimony, being collateral to that of Smith & Daly, and for the purpose of securing the payment for the work being done by plaintiff for them, counsel cited *Brown v. Hazen*, 11 Mich. 219; *Bresler v. Pendell*, 12 Id. 224; *Gibbs v. Blanchard*, 15 Id. 298; *Hogsett v. Ellis*, 17 Id. 351; *Waldo v. Simonson*, 18 Id. 345; *Welch v. Marvin*, 36 Id. 59; *Baker v. Ingersoll*, 39 Id. 158; *Preston v. Young*, 46 Id. 103; *Studley v. Barth*, 54 Id. 6; *Schoch v. McLane*, 62 Id. 454; *Kelsey v. McDonald*, 76 Id. 193.

*Bishop & McMahon*, for plaintiff.

CHAMPLIN, C. J. In the spring and early summer of 1889, the plaintiff, who was the owner of a steam-dredge, did some work therewith at the mill-docks of Smith & Daly, at Cheboygan, Mich., and the latter owed him therefor a balance of about $760. As they did not pay this, he ceased to work for them. On August 12 of the same year he resumed the work on a promise that this balance would be paid at once. They paid him $300, and promised the balance the following day. On the 13th, and again on the 14th, of August he demanded his pay, and, not receiving it, on the latter day gave his engineer orders to remove the dredge to the mill of D. C. Pelton, refusing to work longer under the contract with Smith & Daly.

On the evening of the same day he met the defend-

ant, Beck, at the Grand Central Hotel office, and the contract was made which is the subject of this controversy. It is claimed by the plaintiff that defendant was having a large amount of lumber sawed at this mill under contract with Smith & Daly. Mr. Smith, of the firm of Smith & Daly, had seen both parties during the day, and brought about this interview.

Plaintiff's version of his talk at the hotel with Beck is substantially as follows: Beck said he wanted plaintiff to go on and complete the dredging; that it was of as much importance to him and benefit to him as to Smith & Daly, because he could not get vessels to go there and ship his lumber on account of the shallow water; that if plaintiff would go on and complete the work he would give him his note for the amount as soon as the work was finished; and that any of the banks at Cheboygan would cash the note. This, plaintiff says, he regarded as equivalent to a cash contract, and on the strength of it remained and completed the work. Plaintiff says that Beck agreed to pay for all the work from and including the 12th of August, and on completing the work plaintiff made out the bill, and presented it to A. R. Beck.

Defendant does not admit the conversation as stated by plaintiff, but admits that he had a conversation with him, and says that his agreement was to indorse or accept Smith & Daly's paper for $500. He says that he expected to hold back money due Smith & Daly for sawing to cover his liability to plaintiff. When the bill was presented to him he mistook the amount for $1,900, and said he did not think that he had held back that amount, and when it was explained that the bill was only for $1,415 he was silent.

There is no dispute as to the amount of the bill, or that the work was done and well done. The mill burned the day the dredging was finished.

It appears that Beck was an officer and stockholder in the A. R. Beck Lumber Company, a corporation, and the defense to the action rests upon two grounds:

1. That the agreement relied upon by the plaintiff is void under the statute of frauds.

2. That defendant had no personal interest in the dredging, except as a member of the corporation, and that whatever he said or did was as an agent of the corporation.

Proof was introduced in the case tending to support both of these theories. The plaintiff, under the charge of the court, recovered a judgment.

Error is assigned—

1. Upon certain language used by counsel in his closing address to the jury.

2. In the court's not directing a verdict in favor of the defendant after the testimony was closed.

3. Upon the following instructions given by the court to the jury, viz.:

" *a*—If you find that the defendant, Beck, did agree to pay the plaintiff for the dredging done at Smith & Daly's mill from and including August 12, 1889, and that his leading object was not to secure credit for Smith & Daly, but to subserve his own business purposes, and to reap the benefit for himself, real or supposed, and such benefit to himself, or the benefit which he reaped, was the real consideration of his promise, then his undertaking was a valid one, and does not come within the operation of the statute of frauds.

" *b*—If you find that Mr. Beck himself was to receive a direct benefit in exchange for which his promise or undertaking was given, it is wholly immaterial whether Smith & Daly were originally also liable or not."

" *c*—But if you find that the contract was made by this individual, without disclosing his agency, for the benefit of the A. R. Beck Lumber Company, without any reference to the Smith & Daly Lumber Company's interests, then your verdict will be for the plaintiff to the full amount of the labor rendered after the 14th, so that your verdict, if it is for the plaintiff, will be for $1,198.50."

" *d*—If the defendant is liable at all, he is liable to

the full amount of $1,198.50, and interest from the time
the labor was performed up to the present time."

We do not think that the language of counsel in clos-
ing the case to the jury was such a departure from
appropriate argument as to call for a reversal of the
judgment.[1]

Neither do we see any error in the instructions of the
court, under the testimony which was introduced before
the jury. The case was fairly presented to the jury
upon the theory of both parties,—one that it was an
original undertaking on the part of Beck, and the other
that it was merely a collateral agreement to the under-
taking of Smith & Daly. The plaintiff relied upon his
own testimony in the case that the undertaking was to
pay in full for the work which he did after a certain
date. The defendant claimed that he undertook to

---

[1] Mr. McMahon, counsel for the plaintiff, in his argument to the
jury, used this language:

"We see Mr. Humphrey laugh when he said, ' We agreed to
become responsible for $500; but,' he says, ' gentlemen, we are not
responsible, we are not liable, because the law will allow us to
crawl out of our promises to pay under cover of the statute of
frauds.'"

*Mr. Humphrey:* "I desire an exception to these remarks of
counsel to the jury."

*Mr. McMahon (resuming):* "If he agreed to pay, an honest jury
will not go a great ways out of their way to stretch the testimony
very far in order to help a man who does not want to pay his
just debts."

*Mr. Humphrey:* "Note an exception to that."

*Mr. McMahon:* "Yes, sir. I say an honest jury will try to make
a man pay what he has agreed to pay, and they will not stretch
the evidence, they will not go one hair's breadth out of their way,
in order to find the way to let him out on the plea of the statute
of frauds; because a promise is a promise, and what a man agrees
to do he ought to do, whether the statute of frauds stands in the
way or not."

*Mr. Humphrey:* "Note an exception."

*Mr. McMahon:* "Therefore, if you let this man go free, this
Alexander R. Beck, if you find that he has made a defense under
the statute of frauds, I say you will not travel one hair's breadth
out of your way to help him make that defense,—you will not help
him to come in here and plead the benefit of the baby act."

*Mr. Humphrey:* "Note an exception."

*Mr. McMahon:* "That indorsement theory, that collateral theory,
was hatched up afterwards, gentlemen."

become security for the amount of $500 **for** Smith &
Daly.  The court was therefore correct in charging the
jury that, if the plaintiff was entitled to recover at all,
he was entitled to recover for the full amount claimed,.
and unless he was entitled to the full amount claimed
he was not entitled to anything.

His instruction was also correct upon the question of
the individual liability of Beck in entering into the
contract without disclosing his ˙ agency, although he
might have been in fact merely an agent acting for the
A. R. Beck Lumber Company.

We discover no error in the record, and the judgment
is affirmed.

MORSE, McGRATH, and LONG, JJ., concurred.  GRANT,.
J., did not sit.