112   243
127   675
----
112  243
146  543

WENZEL *v.* JOHNSTON.

1. CONTRACTS—STATUTE OF FRAUDS—ORIGINAL PROMISE.

In an action to recover for labor performed upon a building belonging to L., evidence that defendant told plaintiff that he would have some work for him, and that L. would see him about it; that plaintiff met L., and gave him an estimate of the cost of the work, but afterwards, suspecting L.'s responsibility, told defendant that he had found that L. was without credit, whereupon defendant said that it was all right, that he (defendant) was putting money into the matter and helping L. along, that all the money would go through his (defendant's) hands, and that he would pay plaintiff,—is sufficient to justify a jury in finding a direct promise by defendant to pay for the work.

2. TRIAL—INSTRUCTIONS.

A statement in the charge that it is the contention of plaintiff that he went to defendant, and made a designated statement, is not available error, where the court, on objection being made, withdraws the statement, and says that the contention of plaintiff is that that was the effect of what was said between the parties.

3. SAME—REMARKS OF COUNSEL.

No presumption of injury arises from the use of improper language by counsel in his argument to the jury, where the court immediately declares such remarks improper, in the presence of the jury.

Error to Wayne; Hosmer, J.   Submitted February 3, 1897.   Decided March 29, 1897.

*Assumpsit* by Paul Wenzel against Cyrus Johnston for work and labor performed.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*Charles C. Stewart,* for appellant.

*James D. May,* for appellee.

MONTGOMERY, J. This is an action for a plumber's bill. The plaintiff recovered, and the defendant brings error. The principal question is whether there was any evidence tending to show a contract made direct to the defendant, or whether, on the other hand, the evidence is open to no other construction than that the promise of defendant was collateral, and hence within the statute of frauds. The learned circuit judge submitted this question to the jury. Defendant contends that this was error. Plaintiff's testimony was to this effect:

"Cyrus Johnston had some deal with a man by the name of Peoples, and he had some work to finish up for him, which I did for Mr. Johnston, and he told me that he would have some more work for me to do by and by. It was not direct for him, but for a man named Lake, I had the dealings with; and he told me Mr. Lake would call upon me and see me in regard to the work. Well, I received a postal card from Lake to meet him either at his house or Johnston's office; and Mr. Lake and I went to the place, and I figured the work over, and gave him a price on it, and we came out to the Twenty-Fifth street houses, and I saw some excavating done on those. * * * I thought some one had started the work, and did not get his pay, and did not trust the man; so I was suspicious myself about it, and I went to Mr. Johnston, and told him that I looked up Mr. Lake's record, and I found that his credit was no good, and so Mr. Johnston told me, he says, 'That is all right.' He says, 'I am putting $520 into this matter, and I am helping Lake along, and all the debts and money go through my hands, and I will pay you the money.'"

On cross-examination he repeated this statement, and added that he told Mr. Johnston that he would go ahead with the work if he (Johnston) said so; that nothing was said about charging it to Johnston, but that he (Johnston) told plaintiff that he would pay his bill. In answer to the question, "Didn't he tell you then that there would be moneys going through his hands, if that went through, and he would try to get the money for you?" the plaintiff replied:

"No, sir; he did not say anything about that. He spoke about some deals they were making, but he said he let Mr. Lake have $520.    *    *    *

"*Q.* What, then, did you understand?

"*A.* I understood that Mr. Johnston ' was to fix up matters for Mr. Lake with his money. That is the way I understood Mr. Johnston.

"*Q.* That is, that Mr. Johnston was going to loan Lake $520?

"*A.* He said that he let him have $520. I did not know whether Mr. Johnston was to pay me out of the $520 or out of some other money."

The defendant's testimony was opposed to this of the plaintiff, and it appeared that, upon the ledger of the plaintiff, the account was first charged to Lake; but the testimony of the plaintiff and his bookkeeper tended to show that the original charge on the day book was to Johnston, with Lake's name added for the purpose of identification.

We are unable to say that, upon this testimony, there was no evidence of a direct promise. Defendant contends that the record shows a contract with Lake prior to the undertaking of Johnston, and fails to show that that contract was abrogated. The evidence was for the jury to construe. By the plaintiff's testimony, no contract appears to have been completed with Lake, and the jury would be justified in construing the promise as a direct promise by Johnston.

Complaint is made of the charge of the court, but, as no novel questions are involved, we think it sufficient to say that the charge, in our judgment, fairly covered the case, and presented the issues to the jury.

It is claimed that the circuit judge misstated the evidence to the jury. The court, in opening his charge, in stating the plaintiff's claim, said that—

"The contention of the plaintiff is that, after he had examined the work, he immediately proceeded to find out what the pecuniary responsibility of Lake was, and, having satisfied himself that Lake was not pecuniarily respon-

sible, he immediately went to Johnston, and said, ' Mr. Johnston, I am not going to give credit to Mr. Lake,' and thereupon—''

Here he was interrupted by defendant's counsel with the statement that the witness had made no such statement on the stand.   Then the court added:

"I take that back.   The contention of the plaintiff is that that was the effect of what was said between them. The contention of the plaintiff in this case, and the contention of his attorney, is that the conversation had between them, between himself and Johnston, was of that purport, although not in that language.''

We think there was no error in this.

Complaint is also made of submitting to the jury the question as to whether the plaintiff looked to Johnston as original promisor, but, as already stated, we think that the evidence was sufficient to justify the submission of this question to the jury.

There is also complaint of the language of counsel on the argument of the case to the jury, but we think, in view of the fact that the court immediately declared the remarks of counsel improper in the presence of the jury, that no presumption of injury to the defendant can arise.

While the case is evidently a close case upon its facts, and the testimony on the part of defendant, as it appears in the record, would seem to have been quite persuasive, yet we have not been able to agree with defendant's counsel that there was no case for the jury; and, as we discover no damaging error in the case, the judgment will be affirmed.

The other Justices concurred.