## HAAK *v.* KELLOGG.

1. STATUTE OF FRAUDS—ORIGINAL OR COLLATERAL UNDERTAKING
   —EVIDENCE.

In an action for the price of building materials furnished for a
house in course of erection under contract, evidence exam-
ined, and *held*, to make a question for the jury whether the
owner agreed, in consideration of the delivery of the balance
of the materials necessary to complete the house, to pay the
furnisher for materials already delivered to the contractor
and to be delivered.

2. COSTS—WRIT OF ERROR—REVERSAL.

Plaintiff in error is entitled to costs on reversal, though the
trial court directed a verdict of his own motion, there being
nothing to show that he would not have submitted the case
to the jury if defendant in error had so requested.

Error to Calhoun; Hopkins, J. Submitted November
14, 1906. (Docket No. 70.) Decided December 3, 1906.

Assumpsit by Harry K. Haak against H. W. Kellogg
and Fred W. Rainbow for goods sold and delivered.
There was judgment for defendants on a verdict directed
by the court, and plaintiff brings error. Reversed.

*James L. Powers*, for appellant.

*D. C. Salisbury*, for appellees.

MOORE, J. The plaintiff is a dealer in lumber. He
sued defendants to recover a balance due for lumber fur-
nished under such circumstances he claims made defend-
ants liable to pay for it. The circuit judge directed a
verdict for defendants. The case is brought here by writ
of error.

A number of assignments of error are argued by coun-
sel, but the important question is whether the case should
have been submitted to the jury. The record discloses

that defendants are the owners of certain real estate; that in the fall of 1903 they let a contract to George Beckley to erect a house thereon. The plaintiff furnished some lumber and material to Mr. Beckley, for which he was not paid. We quote now from the testimony of the plaintiff:

"I went to Mr. Beckley and asked him for a part of this money. He stated that he could not get it, and dilly-dallied along for about a week. So I finally told Mr. Beckley. I said, 'Now, Mr. Beckley, I won't furnish any more lumber unless I know where my money is coming from.' Then we went to see Mr. Mike Vernon, the real estate agent. I found he had something to do with it. Well, we finally went down to see Mr. Rainbow at the Duplex, and at that time I stated just the circumstances, that I was depending on this money, and we talked back and forth, and finally I told Mr. Rainbow that I would not furnish any more lumber on this job unless there was some definite information where the money was coming from. Well, he said then that he did not have the money. Then I said, 'Would you give me your note on account of this lumber bill?' and he stated he would. And this same time he stated, 'You are not to look to Mr. Beckley for the pay for this lumber.' He said, 'You go ahead and furnish the lumber, and I will pay for it.' And under those circumstances I went to work.

"*Mr. North:* I move to strike out the testimony just as to his oral statement to let him have the lumber, and that he would pay for it. It is not responsive, and it is incompetent testimony within the meaning of the statute of frauds.

"*The Court:* It may be stricken out as unresponsive.

"*Mr. Powers:* Exception.

"After I had that conversation with Mr. Beckley and after the house was inclosed as agreed upon, I had a conversation with him about the payment of the money. He did not pay me for the lumber at that time. After that Mr. Beckley and I went to the Duplex and called Mr. Rainbow out, and I just told him the circumstances, how the matter stood, and Mr. Rainbow stated then and there, in the presence of Mr. Beckley, to let him have lumber to finish the job. He wanted to have the job finished, and that he would pay for it, and he gave me a

note for $200, which I took over to the Merchants' Savings Bank and had discounted. The note was given on the 3d day of October, 1903, and was paid on the 15th of October, 1903."

There was other testimony of like character offered upon the part of the plaintiff.

The defendant Rainbow denied having made any such agreement. The defendants claim the lumber was sold to Mr. Beckley, and no one else; that it was charged to him; that plaintiff's conduct afterwards should estop him from making any different claim. They further claim that taking plaintiff's testimony as true the agreement was within the statute of frauds, and could not be enforced because not in writing.

For the purposes of this case, we must assume the testimony offered by the plaintiff to be true. The situation, then, was that plaintiff had furnished material to Mr. Beckley which was put into a house belonging to defendants, for which, if he pursued the proper course, he could enforce a lien against the property. It is claimed that it was stated by one of the defendants that they wanted the job finished; that they agreed to pay for the lumber then furnished, and to be furnished, and that plaintiff was not to look to Mr. Beckley for the pay for this lumber, but to them, and that as part of this agreement one of the defendants gave him a short-time note for $200; that, relying upon the agreement, he continued to furnish lumber and materials until the building was completed. *Gibbs* v. *Blanchard*, 15 Mich. 292; *Potter* v. *Brown*, 35 Mich. 274, and the cases cited in the note. *McLaughlin* v. *Austin*, 104 Mich. 489, and *Wenzel* v. *Johnston*, 112 Mich. 243, sustain the proposition that under the testimony offered upon the part of the plaintiff the case should have been submitted to the jury.

Counsel say that, as the judge directed the verdict upon his own motion, they should not be required to pay costs. We have no doubt, if counsel had said to the judge they preferred the case should be submitted to the jury, that

he would have done so.   They made no such suggestion, and plaintiff has been compelled to bring his case here, and should recover costs..

Judgment is reversed, and new trial ordered.

CARPENTER, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.