MONROE LUMBER CO. *v.* BEZEAU.

1. EVIDENCE—OPINION.
   In an action by a lumber company against an owner for materials furnished to the contractor in building a house, it was incompetent to permit a witness to express his opinion or conclusion relative to the meaning which another intended to convey by certain language that was put in the proofs. *Held*, however, that no prejudice was made to appear.
2. SAME—APPEAL AND ERROR—LIEN—STATEMENT.
   It was not harmful error to permit the plaintiff to introduce evidence in relation to the preparation of a statement of lien not filed or served on the defendant.

3. SAME—IMPEACHMENT—HEARSAY.

Testimony tending to impeach the defendant by a witness who heard a conversation the time and place of which he definitely fixed was not reversible as against defendant's objection that the time, place and person were not sufficiently fixed to lay a proper foundation.

4. CONTRACTS—FRAUDS, STATUTE OF—PROMISE TO ANSWER FOR THE DEBT OF ANOTHER—CONSIDERATION.

It was a sufficient consideration for a contract not to file a lien for building materials, that the owner agreed to answer for the debt of the contractor.

Error to Monroe; Gilday, J. Submitted April 12, 1916. (Docket No. 109.) Decided July 21, 1916.

Assumpsit by the Monroe Lumber Company against Emma M. Bezeau for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

*Golden & Haas,* for appellant.

*Jesse H. Root* and *Thornton Dixon,* for appellee.

KUHN, J. The plaintiff company is engaged in the lumber business in the city of Monroe. Suit was brought against the defendant to recover for certain lumber furnished by it to her. It appears that in May, 1913, the plaintiff entered into a contract with one John Roberts, whereby it agreed to furnish to said Roberts such materials as he would need in remodeling a dwelling house belonging to the defendant, with whom he had previously made a contract by which he undertook to remodel the house for the defendant. Before the job was completed, and after having received about three-fourths of his contract price, he absconded on or about the 15th day of July, 1913.

It was the claim of the plaintiff on the trial of the case that shortly after the contractor absconded, in the latter part of July, the defendant came to the office of the plaintiff, and while there discussed the matters

of the absconding contractor's indebtedness to the plaintiff and the plaintiff's furnishing the necessary additional material upon credit to complete the building; that during this conversation Mr. Walter P. Sterling, who is the treasurer and general manager and a director of the plaintiff company, informed the defendant that they were going to hold her responsible for the absconding contractor's indebtedness, and that they were going to hold her property; that the defendant thereupon promised that if they would refrain from taking any steps to hold her property, and would furnish her the necessary additional materials to complete the building, she would pay the Roberts indebtedness, together with such indebtedness as she might incur in the completion of the building; that the officers of the plaintiff company agreed to this, and proceeded to furnish the necessary additional material to complete the building. On the other hand, it was the claim of the defendant that, shortly after the contractor absconded, some one purporting to represent the plaintiff company called her by telephone and requested that she come to their office; and when she arrived at the office of the company one of its officers, Edward W. Gaynier, sent for the general manager, Mr. Walter P. Sterling, and upon his arrival they discussed the contractor's conduct and the matter of furnishing the material for the completion of the building; that she agreed to take the balance of the material needed to complete the building from the plaintiff; but that neither Mr. Gaynier nor Mr. Sterling said anything about a lien on her property or about holding her or her property for the Roberts bill; that she never agreed to pay said bill, and did not know that the company intended to hold her for it until suit was commenced against her; that shortly after the building was completed the plaintiff filed a lien against her premises, claiming $1,056.05 as due on their claim, whereupon

the defendant offered to pay the plaintiff the amount of her indebtedness, and tendered the sum of $625, which sum was paid into court to carry out the tender.

The issue thus made by the conflicting claims of the parties was submitted to the jury, who rendered a verdict for the plaintiff for the full amount of its claim, and judgment was entered thereon. The case is here by writ of error. The assignments of error relate to the charge of the court and the admission of testimony.

While the witness Gaynier was on the stand, he was asked a question and allowed to answer as follows:

"*Q.* Well, do you know what he meant by protecting himself?

"*Mr. Golden:* I object to that as incompetent, irrelevant, and immaterial, what Mr. Gaynier concluded that Mr. Sterling meant.

"*The Court:* I think you may answer that question.

"*Mr. Golden:* Exception.

"*A.* Yes, sir.

"*Q.* What was it?

"*A.* By a lien."

It is urged that this testimony was clearly incompetent and inadmissible because it was the expression of a conclusion on the part of the witness as to the intention of a third party, which intention, even if expressed in the absence of the defendant and without her knowledge, and not acted upon by her, would be incompetent, and hearsay. We are of the opinion that this was clearly incompetent for the reason assigned, but the admission of it cannot be said to have been prejudicial.

Some discussion is had concerning the fact that it appears conclusively from the testimony that the word "lien" was not used in the conversation. But it does appear, according to the claim of the plaintiff and the testimony of Mr. Sterling, that it was agreed that the company *would not hold* the defendant's property.

And it was very reasonable that the jury might conclude from this conversation that what was meant was that he would file a lien against the property, which was the only method under the circumstances by which the property could be held.

We cannot find any error on the part of the court in the admission of testimony, relative to the preparation of the statement of lien, which was not filed or served on the defendant.

Assignment of error No. 5 is based on the ruling of the court in permitting the impeachment of the defendant by the testimony of Mr. Boyez Dansard. Objection is made that the time, place, and person were not sufficiently and definitely stated and determined to lay the foundation for and permit the impeachment of the defendant. Mr. Dansard, on his direct examination, was not quite positive whether he had the conversation in question with the defendant or her husband, but stated later in his examination that to the best of his recollection the conversation was had with the defendant. The place was absolutely fixed, and the time was stated to be at or about the time the defendant was at the bank with reference to a loan. There is no question but that the defendant did go to the bank for a loan, and the time of the conversation was fixed by a reference to this certain occasion. This, we think, was sufficiently positive to meet the objection.

The other assignments of error relate to the charge of the court, as to the law applicable to the facts of this case. It is the contention of the appellant that the promise to forego the filing of a lien was not sufficient consideration to support a promise to answer for the debt or default of another, which without such consideration would be within the statute of frauds. But in the case at bar, according to the claims of the plaintiff, it relinquished a right, an advantage to file a lien, and that right or advantage which it gave up

in consideration of the promise of the defendant inured to the benefit of the defendant, released her property from a threatened lien, extended the time of payment of the debt, and furnished additional material. We think the situation here presented is no different in principle from that presented to this court in *Haak* v. *Kellogg,* 146 Mich. 541 (109 N. W. 1068), where it was said by Mr. Justice Moore:

"The situation, then, was that plaintiff had furnished material to Mr. Beckley which was put into a house belonging to defendants for which, if he pursued the proper course, he could enforce a lien against the property. It is claimed that it was stated by one of the defendants that they wanted the job finished; that they agreed to pay for the lumber then furnished, and to be furnished, and that plaintiff was not to look to Mr. Beckley for the pay for this lumber, but to them, and that as part of this agreement one of the defendants gave him a short-time note for $200; that, relying upon the agreement, he continued to furnish lumber and materials until the building was completed. *Gibbs* v. *Blanchard,* 15 Mich. 292; *Potter* v. *Brown,* 35 Mich. 274, and the cases cited in the note. *McLaughlin* v. *Austin,* 104 Mich. 489 (62 N. W. 719), and *Wenzel* v. *Johnston,* 112 Mich. 243 (70 N. W. 549), sustain the proposition that under the testimony offered upon the part of the plaintiff the case should have been submitted to the jury."

See, also, *Mitchell* v. *Beck,* 88 Mich. 342 (50 N. W. 305); *McLaughlin* v. *Austin,* 104 Mich. 489 (62 N. W. 719); *Howell* v. *Harvey,* 22 L. R. A. (N. S.) 1077, and note (65 W. Va. 310, 64 S. E. 249).

Finding no prejudicial error in the record, the judgment is affirmed.

Stone, C. J., and Ostrander, Bird, Moore, Steere, Brooke, and Person, JJ., concurred.