## John Gibbs and another v. Ira Blanchard.

*Statute of Frauds: Joint promise to pay debt of one.* When a sale of goods is upon the joint credit and promise of two, though the property is purchased for, and delivered to but one of them, the legal effect as between them and the vendor, is a sale to the two jointly. Such a promise is an original one as between them and the promisee, and does not come within the Statute of Frauds.

*Pleading: Goods sold on credit: Common counts.* In a suit for the value of goods where the sale was made on credit, to be paid for by a note, the declaration must be special for a refusal to give the paper when the period for which the note was to run is yet unexpired; but after the expiration of such period, the plaintiff may recover upon the common counts.

*Heard January 9th. Decided April 3d.*

Error to Kalamazoo Circuit.

This was an action of assumpsit brought for the value of a horse. The declaration contained a special count setting forth that in consideration that the plaintiff would sell the horse to Daily — one of the defendants below — that they (the defendants) would deliver their note to

plaintiff for the sum of $60, payable in six months; that said horse was delivered to said Daily, but that defendants refused to give their said note or pay for the horse. The common counts were also added.

A copy of a note for $60, signed by Daily and endorsed by Gibbs, was attached to the declaration.

Defendants plead the general issue, and gave notice that the promise of said Gibbs to endorse the said note was not in writing, and was, therefore, void. It also appeared in evidence that Gibbs endorsed the said note on Sunday. The note was tendered to the defendant on the trial. Judgment was rendered for plaintiff. The facts and the exceptions to the rulings, and the charge of the court are stated in the opinion.

*M. J. Smiley*, for plaintiff in error.

1. The undertaking of the defendant Gibbs, at the time of the sale of the mare, and the signing of the note, was collateral, and in aid of the defendant Daily.

If so, then the defendant Gibbs could only be bound by a contract in writing, and parol evidence of such a contract would be entirely incompetent and inadmissible. *Comp. L.* § 3183; 1 *Greenl. on Ev.* §§ 267, 268; 1 *N. H.* 57; 1 *Johns. Ch.* 274; 5 *East.* 10.

Had the plaintiff declared upon a contract such as he has related in his testimony, and had stated in his declaration that it was not in writing, it would be demurrable, and, if bad upon demurrer, evidence to support it, if objected to, would not be competent to charge defendant Gibbs. — 6 *Cow.* 346; 5 *Hill*, 483; 28 *Barb.* 444; 2 *Min.* 227; 3 *Met. Ky.* 463.

The admitted evidence was parol and tended to contradict and vary the note in writing. This was clearly erroneous. — *Edwards on Bills and Notes*, 147, 313, 315; 3 *Camp.* 57; 8 *Taunt.* 92; 3 *Barn. and Adol.* 233; 10 *B. and C.* 729; 1 *Hill*, 116; 13 *Barr.* 297; 7 *Mass.* 518; 11 *Id.* 27.

2. The plaintiff below could not recover on the note against the defendant Gibbs, as his indorsement was made on Sunday, and therefore void. — *Comp. L.* 449, 450 ; 12 *Mich.* 378 ; 2 *Doug. Mich.* 73.

He then sought to recover upon the common counts by delivering up the note. But this he could not do as the note was good as to one defendant. The indorsement only was void. He could not recover against one defendant on the note and against the other upon the common counts.

If the plaintiff below relied upon the special count in his declaration, it was his duty to first demand of the defendants a note such as was claimed by him, and he should allege and prove that a note was drawn and presented to the defendants and a refusal on their part to sign it. — 6 *Cow.* 347.

3. Where goods are sold and delivered to one person for his use, the undertaking of another person in aid of his liability is void unless in writing, although the collateral undertaking may have been the principal inducement to the delivery of the goods ; and where the whole credit is not given to the person who comes in to answer for another, the promise is collateral and within the Statute of Frauds unless in writing. — 2 *Term.* 80 ; 5 *East,* 10 ; 8 *Johns.* 29 ; 18 *Pick.* 369 ; 13 *Wend.* 114, 121 ; 39 *N. H.* 259 ; 13 *Gray,* 613 ; 1 *McCord,* 100 ; *Roberts on Frauds,* 216 ; 1 *Gill. and J.* 260 ; 22 *Me.* 395 ; 4 *Yerger,* 576 ; 10 *Mich.* 319 ; 12 *Id.* 224 ; 1 *Smith's Lead. Cas.* 325.

*H. F. Severens,* for defendant in error.

The principal questions arising upon the record in this cause, are resolvable into two leading points :

*First :* Was it competent to charge the defendant, Gibbs, in this cause with liability without written evidence ? and, *Second :* Was the plaintiff below estopped by the note from proving the facts, making Gibbs chargeable :

said note being repudiated by said Gibbs, as having been signed (or endorsed) by him on Sunday in violation of the statute, and having obtained the ruling of the court, that the note was as to him* void for that reason?

1. The evidence in the case tended to show that the defendants bought the horse in question, for the use of Daily, and agreed to become jointly liable therefor, and a promissory note was to be signed and given for the price covering a term of credit; and the charge of the court substantially submitted to the jury whether this state of facts was proven, and instructed them that, if they so find, the statute of frauds would not be available to the defendant, Gibbs.

*a.* By section 3183 of *Comp. L.*, "Every special promise to answer for the debt, default, or misdoings of another person," is void, unless it be manifested by writing. The promise here intended is one which is distinct from, but accessory and collateral to, such "debt" of another person. The statute can have no application to the case of a person originally and directly liable for the "debt." In other words, where the only debt, or obligation in the case, is the very one upon which the party is sought to be charged. The statute contemplates two things, a "debt" of one person, and a "special promise" of another to pay it. Here, the "debt" is that of defendant, Gibbs. There can be no inquiry about the evidence of a "special promise," for there is no such element here. The liability of Gibbs, is established without it, and the statute is out of the case.

The statute itself would seem to furnish a plain answer to the objection of Gibbs.

*b.* The terms "original" and "collateral," though sometimes complained of as not always a safe means of distinction, yet have been employed in almost all the modern cases, as well as in many of the older ones; and as was said by Comstock, Ch. J., 21 *N. Y.* 412, 414, were used, the one to mark the obligation of the principal debtor;

the other, that of the person who undertook to answer for such debt.— 2 *Pars. on Cont.* 301 – 2 (*3d ed.*); *Brown on Frauds*, 196, 197, (*1st ed.*); 18 *Me.* 324; 5 *Mass.* 358; 13 *Gray*, 613; 15 *Vt.* 215; 21 *Barb.* 218; 4 *H. & N.* 739; 3 *Dutcher*, 443.

c. The question whether the defendant is a joint promissor or guarantor, is one of fact to be determined, as such, by the jury from all the circumstances of the case.— 2 *Pars. on Cont.;* 4 *H. & N.* 739; 9 *Cal.* 328.

d. It is undisputed that a person who is not to receive the property purchased, may make himself liable without writing, if he undertakes directly for the payment by himself; certainly it can not make any difference whether the person receiving the goods should unite in the promise with him, or some other person should do so. In the last case no one would contend that the case was within the statute. Why should it be so in the other? The promise of the first, is equally to pay the "debt of another," in the one case as in the other.

Again, two persons buy for the use of both; part of the goods for one, part for the other; the promise of neither would be within the statute, and yet upon the principle contended for by Gibbs, it would be a promise to answer for the debt of another. It certainly does not bring the case within the statute, that the goods are bought for one only.

e. Whether upon a sale to one only, a promise by a third to sign a note with the purchaser for the price, is within the statute of frauds or not, is at least doubtful. Upon principle and the weight of authority it would seem that it is not.— 2 *Car. & Payne*, 249; 1 *Bing. N. C.* 103; 2 *Peters*, 170; 5 *Hill*, 483.

f. The term of credit having expired, the plaintiff, on tendering back the note, was entitled to recover upon the indebitatus count.—1 *New R.* 330; 13 *East*, 98; 3 *B. & P.* 582; *Hill. on Sales*, 178 (*2d ed.*); *Chitty on Cont.* 853 (10 *Am. ed*).

And the circumstance that the facts were such as to show the plaintiff entitled to recover for goods sold and delivered, has some bearing in determining that the promise was not within the statute, for in cases falling within the statute, a special count would probably be requisite.— 1 *Saund.* 211, *a. b. ;* 13 *Wend.* 85.

2. The defendants having repudiated the note as being void as against Gibbs were not in a position to interpose the note as an estoppel to preclude the plaintiff from showing the facts making Gibbs chargeable for several reasons.

*a.* A void instrument can not operate as an estoppel. 12 *Mich.* 99; 6 *Ham.* 366; 1 *A. K. Marsh.* 493; *Sprague,* 477.

*b.* The instrument not being executed by Gibbs, as was contemplated by the parties, was imperfect and never became a valid contract as against Daily. At all events not unless Blanchard should elect so to treat it.

*c.* The name of Gibbs having been placed upon the instrument in pursuance of a previous agreement to that effect, and Gibbs not being the payer or owner of the note, he became liable as maker of the note by putting his name on the back of it, as held by many authorities. 31 *Me.* 536; 32 *Id.* 339; 36 *Id.* 265; 44 *Id.* 433; 12 *Vt.* 219; 20 *Id.* 355; 11 *N. H.* 385; 8 *Met.* 504; 7 *Gray,* 284; 13 *Id.* 580; 18 *Mo.* 74, 140; 20 *Id.* 571; 10 *Rich.* 17.

If not conclusively liable as maker, the facts may be proven in order to ascertain the intent of the parties, which will then control.—11 *Conn.* 213; 25 *Id.* 576; 14 *Vt.* 228; 28 *Penn. St.* 189; 18 *Id.* 426; 4 *Duer,* 45; 13 *Ohio,* 228; 17 *Id.* 36; 1 *Greene, Ia.* 331; 13 *Sm. & Marsh.* 617.

It makes no difference whether the name of the party be put upon the back at the time of the principal transaction, or afterwards in pursuance of a previous agreement. 7 *Gray,* 284.

CHRISTIANCY J.

The main question in this case is whether the promise of Gibbs (one of the defendants below) comes within the second clause of the second section of our Statute of Frauds, as a "special promise to answer for the debt, default, or misdoings" of Daily, the other defendant.

The declaration contains a special count upon the contract, and the common counts for goods sold and delivered. The special count sets forth that "in consideration that said plaintiff agreed to sell to the said Daily a certain horse which the plaintiff then and there had, of the value of sixty dollars, undertook and promised the said plaintiff to make, sign, and deliver their promissory note to said plaintiff or bearer in the sum of sixty dollars for the purchase price of said horse, which said promissory note was to be payable thereafter, in six months from date." It further alleges that the plaintiff relying upon said promise of said defendants, and in consideration thereof, did sell and deliver the horse to said John Daily for the price of sixty dollars. The breach alleges the failure and refusal to make and deliver the note, as well as the refusal to p. y the money.

It was clear, from the evidence, that the horse was bought for the benefit of, and delivered to Daily, and that the plaintiff would not have sold the horse on the credit of Daily alone. But upon the question whether Daily and Gibbs were to give a joint note, or whether the latter was only to endorse the note of the former, or to become his guarantor, the evidence was conflicting.

There was evidence from which the jury might have found a joint promise, or in other words a promise by both to execute and deliver to the plaintiff a joint note for the price: and from the circumstances and subsequent acts of the parties the jury might have been authorized to find that the note was to be made payable in six

months; though they might also have found that no particular time was mentioned or expressly agreed upon for which the note was to run.

The evidence tending to show that the promise was joint, or that a joint note was to be given, was substantially this: Gibbs and Daily called upon the plaintiff together, and Gibbs asked plaintiff if he wanted to sell his mare. Plaintiff said he did. Gibbs enquired the price, and being told sixty dollars, wanted to know if plaintiff would take Daily's note if he, Gibbs, would sign it and see it paid; to this plaintiff assented. The mare not being present, and Gibbs, being anxious to get home, said, Daily might go with plaintiff and see the mare, and if the mare suited him he might fetch her back with him and draw up a note and Daily might sign it, and the first time he, Gibbs, went to town he would sign it. The mare was delivered to Daily, who signed a note for it at six months, which was afterwards endorsed by Gibbs on Sunday. This note was produced on the trial and tendered back to defendants.

The court charged the jury that "if it was the understanding of the parties that Daily was the purchaser and that he should give his note to the plaintiff for the price, and that Gibbs should so sign as only to be liable as endorser, the plaintiff must fail. If, however, the understanding of the parties was at the time, that Gibbs and Daily were the buyers of the mare, and that both were to be liable as purchasers for the purchase price, and, accordingly, should become joint makers of a promissory note for its payment, though Daily was less relied upon by the plaintiff than Gibbs, and though, in point of fact, it was understood that the mare, when bought, should belong to Daily, the plaintiff is entitled to recover. That the principle in this class of cases is, that if the agreement be such that two persons, in the purchase of goods, do at the same time become co-debtors to the seller for

the price, then both are purchasers, and the case is not within the statute of frauds, and no memorandum in writing is necessary. But if it be such that one, at the time, becomes debtor to the seller, and the other security only for the debt, it is within the statute of frauds, and the undertaking of the security is void unless a memorandum of it in writing is made."

Though the question is one requiring some accuracy of discrimination, I have come to the conclusion, after a careful examination of the authorities, that the charge of the court was not only correct, but that it expresses the true rule of law applicable to the question with remarkable clearness.

No question can arise as to the sufficiency of the consideration for the undertaking of Gibbs, whether original or collateral, within or without the statute. Without his promise, the plaintiff would not have parted with his property. The consideration, therefore, is equally as good in law as a sale of the horse to him alone would have been for his sole promise to pay the price.

The plain, ordinary meaning of the language used in this clause of the statute, would seem sufficiently to indicate that the class of special promises required to be in writing includes only such as are secondary or collateral to, or in aid of the undertaking or liability of some other party whose obligation, as between the promissor and promisee, is original or primary. If there be no such original or primary undertaking or liability of another party, there is nothing to which the promise in question can be secondary or collateral, and the promise is, therefore, original in its nature, and not within the statute. In other words, the statute applies only to promises which are in the nature of guarantees for some original or primary obligations to be performed by another. This has been settled by a remarkably uniform course of decision since the passage of

the statute — 29 *Car.* 2, *Ch.* 3 § 4 — which does not essentially differ from our own and those of most of the states of the Union. So numerous and so uniform have been the decisions upon this point, that it would savor of affectation to cite them. They will be found cited in most of the elementary treatises. — *See Brown on Stat. Frauds,* ch. 10; *Chitty on Cont. p.* 442, *et seq.;* 2 *Pars. on Cont.* 4*th ed.* 301. And though the terms *original* and *collateral* have been criticised, yet when used, the one to mark the obligation of the principal debtor, the other that of the person who undertakes to answer for such debt, they are strictly correct, and give the true view of this clause of the statute. — *Mallory v. Gillett,* 21 *N. Y.* 412, 414; *Brown on Stat. Frauds, ch.* 10, § 192.

As a result of this principle, that one must be held originally or primarily, and the other only collaterally, or in default of the former, it follows that the statute only applies to such promises made in behalf or for the benefit of another, as would, if valid, create a distinct and *several* liability of the party thus promising, and not a joint liability with the party in whose behalf it is made. For if one be bound in the first instance and at all events, and the other only contingently, or on default of the first, the liability could not be joint. On the other hand, if the promise or the obligation of the two be joint, as between them, on the one side and the promisee on the other, then neither is collateral to the other; and such joint promise is original as to both. Hence it has been held in England that an agreement to convert a separate, into a joint debt is not within the statute; the effect being to create a new debt, in consideration of the former being extinguished. — *Exparte Lane,* 1 *De Gex,* 300; *Brown on Stat. of Frauds,* 193.

Where the question arises (as it has in almost all the cases), as one of the *several* liability of the party promising in behalf of another (as for the price of goods sold

to another), the true rule undoubtedly is, that if the latter (to whom the goods are sold) be liable at all, then the promise of the former is collateral, and must be in writing; because, from the very nature of such a case, the party to whom the goods are sold, and in whose behalf the promise is made, is the principal debtor; and because it would be manifestly unreasonable to hold that both were in such cases *severally* liable as principals, as upon several original undertakings at the same moment. *See Hetfield et al v. Dow*, 3 *Dutcher*, 440; *Dixon v. Frazee*, 1 *E. D. Smith*, 32. And this rule applies equally when the promise is made in reference to a pre-existing liability of another, if the plaintiff in accepting the promise does not release the principal. In reference to all such cases the authorities may be said to be entirely uniform. But the rule thus established as to cases where the question is one of the *several liability* of the party making the special promise, can, I think, have no application to the question of a joint liability upon a joint promise of the two. The only intimation to the contrary which I have seen is to be found in a dictum of Judge Catron in *Matthews v. Milton*, 4 *Yerg.* 576, a case in which no such question was involved, there being no evidence tending to show a joint promise. To say that when the party originally owing the debt, or for whom goods are purchased and to whom they are delivered, is liable at all, no other person can be held severally liable unless the promise be in writing, is merely saying that such promise is collateral, and therefore within the statute. But to say that they can not both become jointly liable upon their joint promise, not in writing, to pay such debt or the price of such goods, if the party originally owing the debt or receiving the goods be at all liable, is but another form of declaring that it is *not competent* for both to become original promisors, as between them and the promisee, unless both are under an equal obligation, as *between themselves*, for the ultimate payment of the debt. Such a proposition,

it seems to me, can not be maintained either upon principle or authority. Such an objection to a joint promise seems rather to have reference to some supposed defect of consideration (a question entirely distinct from the statute), than to the promise. And, if the party promising jointly with another to whom goods are furnished, can not be bound jointly with the latter, because, as between the two promisors, he, not having received the goods, is under no obligation to pay; then the same reason ought to operate with still greater force, against his *several* promise to pay the *whole* price of goods received by the other. But ·the law in the latter case is well settled the other way.

It was very correctly, remarked by Whelply, Judge, in Hetfield et al v. Dow, above cited, that, "to settle the rights of promisors *inter sese*, to ascertain as *between them*, who is to pay the debt ultimately, is no part of the object of the act. It by no means follows that he who by the arrangement between the promisors, ultimately may be bound to pay the debt, is, as *to the promisee*, the principal debtor. That does not concern him." This view, it seems to me, rests upon sound reasons — reasons which must naturally enter into the consideration of business men, in the ordinary transactions of business. Where a party has been willing to put himself in the position of an original promisor (either jointly or severally) to a vendor for goods purchased for the benefit of, or delivered to another, the vendor has a right conclusively to presume, that such relations or arrangements exist between the two as to make it the duty of the party or parties promising, as between themselves, to · pay according to the promise. And to allow the contrary to be shown to defeat the promise, would operate as a fraud upon the vendor.

The question of a joint promise appears to have· been seldom raised for adjudication in connection with the statute of frauds; but the following cases fully sustain the

proposition, that a joint promise of two, whether to pay the pre-existing debt of one of them, or a debt contracted at the time for his benefit (as for goods bought for and delivered to the one), does not come within the statute, but is an original promise, as between them and the promisee, and valid without writing. *Exparte Lane*, 1 *De Gex*, 300; *Wainwright v. Straw*, 15 *Vt.* 215; *Stone v. Walker*, 13 *Gray*, 613; *and Hetfield v. Dow*, 3 *Dutcher*, 440. See also by analogy *Batson v. King*, 4 *H. & N.* 739. The same doctrine is laid down by Mr. Brown in his able treatise on the statute of frauds.— *Ch.* 10, § 197.

It is true that in *Wainwright v. Straw*, which most resembles the present case, the decision is placed in part upon the ground that the sale was made to both. The facts were that Straw and Cunningham both went to plaintiff's store and said they wished to buy a stove for Straw, but that both would be responsible. Now I can see no difference in legal effect between the case where A and B say to a merchant, "We want to buy a stove for B, and both of us will be responsible," and the case where A says, "B wishes to purchase a stove, but we will both be responsible." *Substantially*, the transaction is the same; in both cases alike it is a sale for the benefit of the one on the joint credit of the two, and the real question in both cases is, whether the credit was given to both jointly. I do not think the court, in *Wainwright v. Straw*, based their decision upon the narrow and merely verbal ground of the use of the first person plural, showing merely who wanted the stove, but upon the broad ground above stated, that it was sold upon their joint credit. And in all such cases where the sale is upon the joint credit and promise of the defendants, though the property is purchased for, and delivered to but one of them, I think the legal effect of the transaction constitutes, as between them and the vendor, a sale to the two jointly. The sale, as between

the vendor and the vendee, is to the party or parties to whom the credit is given for the price, without reference to the question for whose use it is purchased, or who, as between the promisors, is to be its owner when bought.)

This brings us to another point in the case. The sale (if upon the joint credit and promise of the defendants) was a joint sale to both, as between them and the plaintiff. But in the special count of the declaration it is alleged as a sale to Daily alone. The plaintiff can not therefore recover upon the special count.

But upon the count for goods sold and delivered, the sale having been made to both, the plaintiff would be entitled to recover, if the facts be such as would warrant a recovery upon a sale made for the joint benefit of, and the property delivered to both.

The defendants having failed to give their joint note, as agreed — the incomplete note of Daily alone, with the void endorsement of Gibbs, made on Sunday, not being a compliance with the joint promise, and being tendered back to the defendants on the trial — the case presented is the ordinary case of a sale of goods on credit, to be paid for by a bill or note, in which case it is well settled that, though, while the credit — or period for which the bill or note was to run — is yet unexpired, the declaration must be special for a refusal to give the paper; yet, after the period for which the bill or note was to run, the plaintiff may recover upon the common count for goods sold and delivered.—*Hesketh v. Blanchard,* 4 *East,* 149; *Lee v. Risdon,* 2 *Marsh.* 495; *Brooke v. White,* 1 *N. R.* 330; *Marshall v. Poole,* 13 *East,* 98; *Heron v. Granger,* 5 *Esp.* 269; *Dutton v. Solomonson,* 3 *Bos. & P.* 582; 1 *Chitty's Pl.* (7 *Am. ed.*) 380, 381; *Hilliard on Sales* (2d *ed.*) 178. This action was brought more than eight months after the sale. The evidence was such that the jury might have found either that the note was to run six months (none of it tended

to show a longer period), or that no specific time was agreed upon for which it was to run.   Should the jury find the latter, then a note made in compliance with the promise would have been a note payable immediately or on demand.— *Herrick v. Bennett*, 8 *Johns.* 374; *Thompson v. Ketcham, Id.* 189; *Field v. Nickerson*, 13 *Mass.* 131; *Russell v. Ormsbee*, 10 *Vt.* 274; *Bailey v. Simonds*, 6 *N. H.* 159.   But in either case the credit — the time for which the note was to run — had expired, and the plaintiff was entitled to recover as for goods sold and delivered.

I think there was no. error in the charge or proceedings of the court below, and that the judgment should be affirmed, with costs.

COOLEY J. concurred.

CAMPBELL J.

Assuming that in his charge the judge gave the jury to understand that if there was in fact intended to be a contract of suretyship, the case would come within the statute, I think there is no error in the charge.   Such, I think, is its meaning, taken as a whole, and in the view which was evidently taken of the testimony by the jury, this became the only point of importance in the case.   I can not regard the mere form of the liability (as joint or several), as having any bearing on the applicability of the statute, inasmuch as sureties very generally assume joint obligations with their principals, and are, nevertheless, protected in all of the rights of suretyship, and vested with all its immunities.   I have had some doubt whether some of the rulings were not open to the objection that they rest too much on the question of a joint obligation; but regarding the subsequent qualification as removing this difficulty, which, upon the facts, was not very likely to mislead, I concur in sustaining the judgment.

MARTIN Ch. J. did not sit.