## WILLIAM HAKE v. SELIG SOLOMON.

*Statute of frauds—Sale of liquor in this case held not to fall within—See opinion for facts.*

Where the owner of a hotel arranged with a tenant to pay for the liquor necessary to stock the bar, and to be repaid by a share of the bar receipts, and under such arrangement liquor was sold by plaintiff to the tenant, with the knowledge of the landlord, who agreed to pay for the same, which liquor was used under such arrangement, and the landlord's share of the bar receipts was more than sufficient to pay for all advances made to and debts incurred by the tenant under such arrangement,—

*Held*, that his promise was not within the statute of frauds, and that he was *personally* liable to the plaintiff thereon.

Error to Iosco. (Tuttle, J.) Argued July 1, 1886. Decided July 8, 1886.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*O. E. M. Cutcheon*, for appellant.

*Norris & Uhl*, for plaintiff.

SHERWOOD, J. In this case Hake sued Solomon for the value of a barrel of whisky, and claimed to recover $110 therefor.

Solomon owned the National Hotel, in Au Sable. One J. Widdifield was proprietor of the hotel, and was a tenant of Solomon.

Hake was a liquor dealer in Grand Rapids, and E. L. Ives was his traveling agent and salesman.

The liquor was sold to Widdifield by Hake, October 28, 1882. In March, 1883, Hake, with Ives, was at Widdifield's, and had a settlement with him, and it was found that Widdifield was then owing Hake $588, which amount included

the price of the barrel of whisky sued for. It was then yet unopened. Widdifield was making payment slowly, and, in order to reduce his indebtedness and relieve his embarrassment, Hake took back the barrel of whisky, and credited the amount on Widdifield's account.

The barrel was then set apart, and Widdifield ordered to deliver it to Mr. Kelly, a druggist of the place, when he should thereafter call for it. Kelly did not call for it.

On the twenty-fourth day of May, 1883, Ives called again at Widdifield's, found the barrel of liquor had not been taken away, but had been opened by Widdifield, and he was then supplying his bar therefrom. Ives then sold a bill of liquor to Widdifield amounting to $289.25.

It further appears, on the first of May, and for some time thereafter, Widdifield was not able to meet the demands upon him, and Solomon helped him to pay his liquor tax for that year, to the amount of $300; and, as the plaintiff claims, they entered into an arrangement by which Solomon was to pay for the liquors necessary to stock the bar, and was to be repaid from the daily proceeds of the bar, he to receive each night two-thirds of the receipts, until he was entirely reimbursed for the money advanced for taxes as well as for those paid for liquors; that under the arrangement the barrel of liquor was taken and used, and that it was included in the liquors Solomon was to pay for; and Ives testified that on this May visit Solomon agreed with him to pay for the disputed liquor, and that, under the arrangement with Widdifield, Solomon received two-thirds of the proceeds from its sale at the bar. It does not seem to be disputed that the liquor was used up by Widdifield at the bar.

Solomon denies the arrangement with Widdifield and the promise to pay for the whisky, and claims that he never heard of the disputed liquor until September 10, 1883; that the debt was that of Widdifield; that he never promised to pay it; and that the statute of frauds is a perfect defense against the plaintiff's claim, in any event.

The cause was tried in the Iosco circuit, and, under the charge of the court, the plaintiff recovered.

Defendant brings error.

The jury were asked to find specially to the following questions propounded by counsel for defendant, which they did, as herein stated :

" *Q.* When did Ives and Solomon first talk about the liquor in question ? *A.* About May 24th.

" *Q.* Did Mr. Solomon, at any time, have any interest in, or receive, the receipts of the National Hotel bar, over and above sufficient to reimburse him for such money as he advanced, or became security for, for the accommodation or assistance of Widdifield ? *A.* Yes.

" *Q.* Did Mr. Ives, in October or November, 1883, claim from Mr. Widdifield the payment for the liquor in question ? *A.* No proof to that effect."

There was testimony in the case tending to show that the arrangement claimed between Solomon and Widdifield was made, and made as early as about May 1, 1883, or before any liquor was used from the barrel, and the jury found that as early as the twenty-fourth day of May the plaintiff's agent had a talk with Solomon about his paying for the liquor sold by Widdifield ; and that he not only ordered the plaintiff to deliver more liquor to Widdifield, but expressly agreed at the time to pay for the barrel in question. The testimony tends strongly to prove, also, that he received his share of the money received after the first of May for all the liquor sold, and that this was all done under the new arrangement.

The jury, it seems, also found specially that Solomon received more than enough from the proceeds of the business to reimburse him for his advances to Widdifield.

We think, also, there is testimony tending to show that the bill of liquors, sold at the time the plaintiff swears that Solomon told him he would pay for that in question, all constituted one transaction ; and, if it did, there was a sufficient consideration to support the promise, which would relieve the plaintiff's case from the operation of the statute of frauds.[1]

Upon the question whether there was such sale of goods

[1] See *Grice v. Noble,* 59 Mich. 523; *Toan v. Pline,* 60 Id. 385.

at that time, and whether, as a part thereof, was the defendant's promise to pay for the liquors in question, was left to the jury upon the testimony, and the verdict is against the defendant. This we cannot disturb.

We quite agree with plaintiff's counsel that the arrangement or bargain between the plaintiff's agent, Ives, and the defendant, when ascertained, must determine the question involved in the case.

We think all that was proper, under the testimony in the case, of the defendant's second and third requests to charge, was given to the jury in the general charge.

The defendant's first request was properly refused,—it required the court to pass upon the facts in the case.[1]

The court told the jury, in substance, if Widdifield purchased the liquor, and the title passed to him, and that Solomon agreed to pay for it,—as he testified that he would pay for it, provided there was enough coming from Widdifield so that he could,—that would be a promise to answer for the debt of another, and must be in writing, to be binding upon Solomon, and, if they believed the defendant and his witnesses, the plaintiff could not recover ; but if the liquor was sold to Solomon, though billed to Widdifield, and Solomon agreed to pay for it, the sale and promise to pay would not be within the statute of frauds. We think, under the instructions given by the court, the defendant's rights in the case were not prejudiced.

We have examined all the errors assigned, and we find none requiring further discussion, or making a new trial necessary.

The judgment will therefore be affirmed.

The other Justices concurred.

---

[1] First request.—"That the promise made to the plaintiff, if any, was a promise to pay the debt or answer for the default of another, and, not being in writing, was void."