MOLLIE MILLER, Appellee, v. ROYAL A. ADAMS ET AL., Appellants.

**Statute of frauds:** ORIGINAL PROMISE: EVIDENCE. Evidence which generally tends to show an original rather than a collateral promise to pay for services rendered another is competent to show an original promise; and although on cross-examination some of the testimony tends to show that the credit was extended to the third person, the effect of the evidence as a whole and the nature of the contract is for the jury.

**Same:** EVIDENCE. Evidence that defendants promised plaintiff that they would see that she was paid for her service rendered an-

other was sufficient to take the issue of an original promise on their part to the jury.

**Statute of frauds:** COLLATERAL AND ORIGINAL PROMISE. Where credit
3 is extended to the person receiving the service, the promise of a third person to pay therefor is collateral and can not be enforced; but where it was performed on the promise of the third person and no credit was extended to the person for whom the service was rendered the promise is original and may be enforced.

**Same:** EVIDENCE. The fact that plaintiff before bringing action
4 against defendants for services rendered a decedent, on the theory that they were personally liable therefor, filed a claim against decedent's estate for the same, stating therein that defendants guaranteed the claim, was not conclusive that defendants' promise was collateral, but simply put that question in issue for the jury to determine.

*Appeal from Monroe District Court.*—HON. FRANK W. EICHELBERGER, Judge.

WEDNESDAY, FEBRUARY 10, 1909.

REHEARING DENIED WEDNESDAY, MAY 12, 1909.

ACTION at law to recover compensation for services rendered Emma Adams, the wife of John Adams and the mother of Royal Adams. The defense was practically a general denial. The case was tried to a jury, resulting in a judgment for plaintiff, and defendants appeal.—*Affirmed.*

*J. F. Abegglen,* for appellants.

*R. T. Mason,* for appellee.

DEEMER, J.—There is no doubt that plaintiff nursed Emma Adams and performed other services for her during the years 1905 and 1906, and the verdict, which was for $125, with interest, has sufficient support in the evidence, provided it be found that defendants are liable for

the services so performed. It is contended for appellants, however, that the services were not rendered for them, and that they were not performed at their request. They further insist that the promise relied upon by plaintiff was within the statute of frauds, being a collateral one to answer for the debt of another, which was not in writing as the law requires. It is further argued that the verdict is contrary to the instructions, and was the result of passion and prejudice, as evidenced by the findings of the jury in answer to special interrogatories. Some other matters are argued, which will be noticed during the course of the opinion. The main proposition in the case is indicated by the sixth instruction given by the trial court, reading as follows:

If you believe from the evidence that there was some agreement with defendants, or either of them, with reference to the performance of the alleged services by the plaintiff to Emma Adams, you will then determine from the evidence whether the defendants promised and agreed with plaintiff that they would pay for such services, or whether they merely agreed to stand good for or guaranteed the payment for such services to Emma Adams or her husband, John Adams. If you find that defendants agreed to pay the plaintiff for such services before they were rendered, and that the plaintiff looked only to and expected pay from defendants only, and did not expect to get her pay from Emma Adams or John Adams, you will find for plaintiff. But if you believe from the evidence in the case that the defendants did not agree to pay the plaintiff for her services, but merely agreed to stand good for or guarantee the pay thereof in case she did not get her pay from Emma Adams or John Adams, then the agreement would be within the statute of frauds, and not being in writing can not be enforced, and if you so find you should find for defendants.

At every stage of the trial defendants claimed that the promise relied upon by plaintiff was a collateral one

and could not be proved by parol testimony, and they claimed that in the introduction of the testimony the trial court overlooked the statute of frauds, and permitted plaintiff to establish by parol a collateral agreement, and that the verdict was either the result of passion and prejudice, or that the jury overlooked the distinction between an original and collateral promise. It should be remembered in this connection that the party for whom the services were rendered was the wife of John Adams and the mother of Royal A. Adams, who is the husband of Minnie Adams; both Royal and Minnie Adams being defendants herein. The claim is made that these defendants requested of plaintiff that she perform the services rendered, and promised and agreed to pay therefor. Plaintiff was a witness in her own behalf, and she also offered two other witnesses to prove the contract claimed by her. After the reception of the testimony, and after both parties had rested, defendants moved to strike from the record the testimony of these witnesses as to the oral promises made by the defendants on the ground that they were within the statute of frauds. This motion was overruled, and of this complaint is made.

I. Plaintiff testified that neither John nor Emma Adams had any property, and that she knew of that fact; that defendant Royal Adams came to her and requested that she go and take care of his mother, and that he would pay for the services; and that at another time both Royal and Minnie Adams promised that they would see that she, plaintiff, was paid if she would take care of the mother. One of the witnesses testified for plaintiff that both defendants said to plaintiff that if she would go out and care for their mother they would see that she was paid. And another testified that defendant Royal Adams said to plaintiff that if she would go out and care for his mother he would pay her. Manifestly, all this testimony was competent, in that

1. STATUTE OF
   FRAUDS:
   original
   promise:
   evidence.

generally it tended to show an original rather than a collateral promise. *Harlan v. Harlan,* 102 Iowa, 701; *Carraher v. Allen,* 112 Iowa, 168; *Blake v. Robinson,* 129 Iowa, 196; *Marshalltown Stone Co. v. Brick Co.,* 114 Iowa, 574. It is true that the cross-examination of some of these witnesses tended to show that credit was extended to Emma Adams, and that defendant's promise was collateral; but the effect of the testimony and the true nature of the agreement was for the jury. There was no error in overruling defendant's motion.

II.   It is argued that there is no testimony upon which to base a verdict against Minnie Adams in any event.   There is testimony in the record to the effect that 2. SAME: this defendant promised plaintiff that she evidence. would see that she, plaintiff, was paid for her services to the mother.   According to one of the witnesses, she said she and her husband promised to pay plaintiff if she would perform the services.   Another witness testified that Emma Adams said she would see that plaintiff was paid for her services.   This was enough to take the case to the jury upon the question of the liability of Minnie Adams.   See cases hitherto cited.

III.   Certain special interrogatories were submitted to the jury, to which answers were made as indicated in the following quotation from the record:

Question 1:   Do you find from all the evidence and circumstances in the case that defendant Royal Adams made a contract with the plaintiff, Mollie Miller, with reference to the services claimed to have been rendered Emma Adams, deceased ?   Answer:   Yes.

Question 2:   If you answer the above question in the affirmative, then was such agreement by this defendant to pay therefor or simply stand good for or a guarantee for the payment, if it could not be collected from the estate of Emma Adams, deceased, or her husband, John Adams? Answer:   Defendant promised to pay plaintiff.

Question 3:   Do you find from all of the evidence

and circumstances in the case that the defendant Minnie
Adams made a contract with the plaintiff, Mollie Miller,
with reference to the services claimed to have been ren-
dered Emma Adams, deceased? Answer: Yes.

Question 4: If you answer the above question in the
affirmative, then was such agreement by this defendant to
pay therefor, or merely to stand good for or a guarantee
for the payment, if it could not be collected from the estate
of Emma Adams, deceased, or her husband, John Adams?
Answer: Defendant promised to pay plaintiff.

It is claimed that these answers are without support
in the testimony, and are the result of passion and preju-
dice; and in this connection it is insisted that the verdict

3. STATUTE OF
FRAUDS:
collateral
and original
promise.

is without support in the testimony, for the
reason that it clearly shows that the promise,
if any, was a collateral and not an original
one. The test whereby to determine whether a promise is
original or collateral is generally stated in this way: Was
the credit extended to the promisor or to the person re-
ceiving the services? If the latter, then the promise is
collateral; but if the services were performed on the
strength of the promise, and no credit was extended to the
party to whom the services were rendered, then the prom-
ise is original and not collateral. See cases heretofore
cited, and *Benbow v. Soothsmith,* 76 Iowa, 151; *Pratt v.
Fishwild,* 121 Iowa, 642. Whether the promise was orig-
inal or collateral is generally a question of fact for a
jury under proper instructions. *Lusk v. Throop,* 189 Ill.
127 (59 N. E. 529); *East Co. v. K'Nessett,* 100 Md. 125
(50 Atl. 18); *Boykin v. Dohloude,* 37 Ala. 577.

Against the testimony already referred to, it appears
that after the death of Emma Adams, plaintiff filed a

4. SAME:
evidence.

claim against her estate for the services ren-
dered her, and upon this claim she stated
that the account was guaranteed by Royal A. and Minnie
Adams. This, of course, tended to show, first, that credit

was extended to Emma Adams, and second, that defendants were simply guarantors of the account; but these declarations or admissions are not conclusive. They simply raised a conflict in the testimony, and took the case to the jury for its conclusion as to the true nature of the transaction. No complaint is made of the instruction relating to this matter which we have heretofore set out, and, notwithstanding the filing of the claim and the statement thereon that defendants were guarantors, the jury was authorized to find from the testimony that the promise was an original and not a collateral one. In other words, the filing of the claim against the estate and the statement made on the claim are not conclusive. See, *East Balt. Co. v. K'Nessett*, 100 Md. 125 (59 Atl. 180). It was for the jury to say under all the evidence to whom the credit was actually given. *Temple v. Goldsmith*, 118 Mich. 176 (76 N. W. 324); *Clark v. Jones*, 87 Ala. 474 (6 South. 362); *Lusk v. Throop, supra; Dean v. Talliman*, 105 Mass. 443; *Hake v. Solomon*, 62 Mich. 377 (28 N. W. 908); *Foster v. Persch*, 68 N. Y. 400. There was sufficient testimony to support the special findings and the general verdict.

No error appears, and the judgment must be, and it is, *affirmed.*