## Symons v. Burton.

[No. 12,191.   Filed November 19, 1925.]

1. FRAUDS, STATUTE OF.—*Appellate tribunal justified in inferring agreement by party to whom goods delivered to pay for them, though another directed the delivery.*—In an action against two defendants for goods delivered to one of them on the direction of the other, an appellate tribunal was justified in inferring that there was an agreement by the former to pay for them where the trial court found that the goods were charged to him and that he was indebted to plaintiff for them. p. 635.

2. FRAUDS, STATUTE OF.—*Courts must look to particular circumstances of each case to determine whether promise to answer for debt of another is collateral or direct.*—In determining whether the promise of one person to answer for the debt of another constitutes a collateral or direct undertaking of the former, the courts must decide the question on the circumstances of each particular case and its general features in order to ascertain the intent of the parties. p. 635.

3. FRAUDS, STATUTE OF.—*Whether contract is within statute of frauds is question of construction and, therefore, for the court.*

—Whether a contract by one party to be responsible for goods delivered to another is within the statute of frauds is a question of construction, and, therefore, for the court.    p. 636.

4. FRAUDS, STATUTE OF.—*Book entries of seller strong but not conclusive evidence in determining to whom credit was given.* —In action against party for goods delivered to another at his request, the book entries of the seller showing to whom the goods were charged are important but not conclusive evidence in determining to whom credit was given.    p. 636.

5. FRAUDS, STATUTE OF.—*Oral promise to answer for debt of another collateral and within statute if credit was given to third person in any degree.*—In determining whether an oral promise of one to answer for the debt of another is an original undertaking or merely a collateral promise for which he is not liable, the general rule is that if credit was given to the third person to any extent, so that he was in any degree independently and originally liable, the oral promise of the other is collateral and within the statute (cl. 2, §8045 Burns 1926, §7462 Burns 1914) and, therefore, voidable.    p. 639.

6. FRAUDS, STATUTE OF.—*Form of promise to answer for the debt of another does not necessarily control, but the question is whether the parties intended it to be a collateral or a direct promise.*—The form of the promise by one person to answer for the debt of another does not necessarily control, but the question always is what the parties mutually understood and intended, that is, whether it was a collateral or a direct promise to pay the debt.    p. 641.

7. FRAUDS, STATUTE OF.—*Fact that goods furnished to one at request of another were charged to third party and the one making request not conclusive that seller extended credit to third party.*—Where goods were furnished to third party on another's request, the fact that they were charged to such third party and the party making the request is not conclusive that the seller extended credit to such third party or looked to him for payment.    p. 641.

8. FRAUDS, STATUTE OF.—*Separate judgment against each of two defendants for goods furnished to one on the other's oral promise to be responsible therefor was not sustained by the evidence, as suing and taking judgment against the former conclusively showed that plaintiff considered the latter only collaterally liable.*—In an action on account for goods furnished to one defendant on the oral promise of the other to be responsible therefor, a separate finding and judgment against each defendant, on the theory that they were separately and severally liable for the debt, were not sustained by the evidence, as the fact that the plaintiff sued the defendant to whom the goods were furnished and took judgment against him shows conclusively

that he considered him primarily liable and that the other defendant's liability was collateral and within the statute of frauds.   p. 645.

From Hamilton Circuit Court; *Fred E. Hines*, Judge.

Action by Fred O. Burton against George Symons and another.   From judgment for plaintiff, the named defendant appeals.   *Reversed.*   By the court in banc.

*George W. Osborn*, for appellant.

*Roland Griffin*, for appellee.

McMAHAN, J.—This is an action by appellee against appellant and Grover Harris to recover on an account for merchandise furnished the latter.   The complaint alleges that the defendants were "separately and severally" indebted to appellee for goods "sold and delivered to them at their special instance and request."   Harris made default.   There was a trial by the court.   The facts were found specially and are, in substance, as follows:

Appellee, Fred O. Burton, was engaged in the grocery and meat business at Sheridan, Indiana, in 1922 and 1923.   Grover Harris was in the employ of appellant for a period of seventeen months.   In November, 1922, appellant, at the request of Harris, went to appellee's store and requested appellee to deliver to Harris whatever provisions the latter might require during appellant's absence from the state.   Appellant agreed that he would pay appellee for whatever provisions the latter delivered to Harris.   Appellee thereafter delivered provisions to Harris in the sum of $102.75 and charged the same to appellant and Harris.   That this sum is due and unpaid, and that appellant and Grover Harris are indebted to appellee in said sum.

Upon these facts, the court concluded as a matter of law that appellee was entitled to a judgment against both defendants for $102.75.   From a judgment in accordance with the conclusion of law, appellant appeals

and contends that the court erred in its conclusion of law, and in overruling his motion for a new trial.

Section 8045 Burns 1926, §7462 Burns 1914, 1 R. S. 1852 p. 299, provides that: "No action shall be brought in any of the following cases; * * * Second. To charge any person, upon any special promise to answer for the debt, default, or miscarriage of another. * * * Unless the promise, contract or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized."

It is appellant's contention that the merchandise mentioned in the complaint and special finding was sold and delivered to Harris, that appellant's agreement was to pay the debt of Harris, and, not being in writing, was within the statute quoted.

As has heretofore been stated, this is an action against appellant *and Harris,* on a complaint alleging a separate and several (not a joint) indebtedness of appellant and Harris for groceries sold and delivered to both at their special instance and request. The court found that appellant, at the request of Harris, went to appellee's place of business and requested appellee to deliver to Harris whatever provisions the latter might require during appellant's absence from the state, that appellant at that time agreed that he would pay for such provisions, that thereafter appellee delivered the groceries to Harris and charged the same to appellant and Harris. The facts and circumstances connected with appellant's agreement and the delivery of the groceries to Harris are not stated in the special finding. We are not advised by the finding as to whether Harris was present at the time appellant made the agreement, and knew of the agreement. There is no finding that the groceries were furnished to Harris on

the strength of and in reliance on that agreement, and on the sole credit of appellant. The court finds that the goods so delivered to Harris were charged to appellant and Harris and that both of them are indebted to appellee for the total value of the same. It is not found as a primary fact that Harris did or did not agree, impliedly or expressly, to pay for the groceries, or that appellee did not, to some extent, extend credit to him and look to him as well as to appellant for payment.

Do the facts found force the inference that there was an agreement on the part of Harris to pay for the groceries, and that appellee looked to, and to some extent, relied upon him to pay the account? We are of the opinion that this question must be answered in the affirmative, since the court found the groceries were charged to Harris and that he was indebted to appellee for them. He could not have been indebted to appellee on any other theory. "It is often difficult from the mere words in which a promise is made to determine whether any credit was given to a third person, and the undertaking therefore collateral to the engagement or liability of such person, or whether it was a wholly independent and original undertaking. In such cases courts must rely upon the circumstances of each particular case, and its general features, in order to ascertain the intention of the parties, and how they viewed it, where it is doubtful whether it was a contract of suretyship or guaranty, or an original undertaking." *Reed* v. *Holcomb* (1863), 31 Conn. 360.

As was said in *Boykin* v. *Dohlonde & Co.* (1861), 37 Ala. 577: "In the construction and application of that branch of the statute of frauds regulating promises made by one person to answer for the debt, default, or miscarriage of another, numerous difficulties have arisen, and many perplexing distinctions have been

taken. But one anchorage at least has been gained by the course of decision in England and in this country; that is, that when the promise of the defendant is to pay for articles to be furnished to a third person, if the transaction be such that the third person is responsible to the person who supplies the articles, the promise of the defendant is collateral, and, if oral, not binding. * * * When, therefore, an action is brought against one, charging him with the value of goods delivered to another, and on his promise to pay; and it is set up in defense, that the promise was to pay the debt of another, and was not in writing, the decisive question is, to whom was the credit given. If the credit was given solely to the defendant—that is, if the goods were really sold to him, though delivered to another—the statute is then out of the case. But, if the whole credit was not given to the defendant—that is to say, if any credit at all was given to the party receiving the goods—the promise of the defendant is collateral, and within the statute. For, in that case, the plaintiff would have a remedy against the party receiving the goods; and all the cases show that it does not matter upon which of the two parties the plaintiff principally depends for payment, so long as the person for whose use the goods are furnished is at all liable to him."

Whether a contract is collateral or original may be a question of construction. If so, it is a question for the court. But the question as to whom credit was given is one of fact to be determined by the jury. The entry in the books of the seller is often of great importance in determining to whom credit was given. If the goods are charged to the person receiving them and not to the defendant, this fact, if unexplained, would be strong evidence, not conclusive, however, that credit was given to the person receiving the goods. *Boykin* v. *Dohlonde & Co., supra.*

In *Webb* v. *Hawkins Lumber Co.* (1893), 101 Ala. 630, 14 So. 407, one Vann sent an order to Webb for certain lumber which the latter did not have. Webb took the order to the lumber company who did not know Vann. Webb, on being asked if Vann was good, replied in the affirmative, and said he, Webb, "would guarantee the bill and pay for it." The lumber company shipped the lumber to Vann. The bill was charged to and mailed to Vann, and afterwards first presented to him for payment. The action was against *both* Webb and Vann. Vann defaulted and judgment was rendered against both of them. The plaintiff testified he looked to both Webb and Vann for payment. In reversing the judgment and holding Webb not liable, the court said: "On the foregoing, which we find to be the facts of the case, though there is some conflict in the evidence, we of course cannot hesitate to declare that the credit upon which the lumber was sold was in some degree, at least, that of Vann, and that, unless there is something in the attitudes sustained to each other in this transaction by Webb and Vann to bring the case within an exception to the operation of the statute referred to, the debt was that of Vann, since he received the property which as between him and plaintiff constituted the sole consideration for the indebtedness, and Webb's promise was to answer for the debt of another within the terms of the statute, and hence voidable at his election because not in writing, expressing a consideration and signed by him; for the rule is that where any credit is extended to the party to whom the consideration moves—where he is looked to at all for payment though the other party may be in much greater degree relied on—the debt is his, and the other party's obligation is that of guarantor, which to be binding must be in writing."

In *Welch* v. *Marvin* (1877), 36 Mich. 59, Welch who

had a contract for the construction of a railroad, went with one Cook who ran a boarding train and whose credit was not good, to Marvin to make arrangements so that Cook could buy meat. Welch said to Marvin: "I am going to become responsible for the meat, * * * and what meat you let Cook have from now, I will pay you for." The trial court refused to instruct the jury that to "make Welch legally liable, they must also find that Marvin thereupon absolutely discharged Cook from liability, and looked only to Welch for pay." In holding it error to refuse this instruction, the court said: "Under no theory of this case, could Cook and Welch both be responsible to plaintiff, severally, at his option. If Cook was liable for the meats furnished after the arrangement with Welch was made, then clearly Welch's liability could not be an original one. It is equally clear, that if Welch's promise was an original promise, and the debt his debt, then Cook could not be held liable thereon. The parties might have * * * been jointly liable, which is not claimed in this case. But they could not, under the circumstances, be severally liable, at plaintiff's option. We know of no better test than this, in a case like the present."

And the same court, in an earlier case, in discussing the question of the several liability of the party making the promise, said: "Where the question arises (as it has in almost all the cases) as one of the *several* liability of the party promising in behalf of another (as for the price of goods sold to another), the true rule undoubtedly is, that if the latter (to whom the goods are sold) be liable at all, then the promise of the former is collateral, and must be in writing; because, from the very nature of such a case, the party to whom the goods are sold, and in whose behalf the promise is made, is the principal debtor, and because it would be manifestly unreasonable to hold that both were in such cases *sev-*

*erally* liable as principals, as upon several original undertakings at the same moment." *Gibbs* v. *Blanchard* (1867), 15 Mich. 292.

If it were claimed in the instant case that there was a joint promise on the part of Symons and Harris, and there was a finding of the court, founded upon any evidence sustaining such claim, a very different question would be presented. *Boyce* v. *Murphy* (1883), 91 Ind. 1, 46 Am. Rep. 567; *Gibbs* v. *Blanchard, supra; Oldenburg* v. *Dorsey* (1905), 102 Md. 172, 62 Atl. 576, 5 Ann. Cas. 841.

The general rule deducible from the authorities is, that if the credit is given to a third person to any extent, so that he is in any degrees independently and originally liable, the oral promise of the other person is collateral and within the statute. *Billingsley* v. *Demplewolf* (1858), 11 Ind. 414; *Downey* v. *Hinchman* (1865), 25 Ind. 453; *Pettit* v. *Braden* (1876),. 55 Ind. 201; *Lomax* v. *McKinney* (1878), 61 Ind. 374; *Anderson* v. *Spence* (1880), 72 Ind. 315, 37 Am. Rep. 162; *Wills* v. *Ross* (1881), 77 Ind. 1, 40 Am. Rep. 279; *Miller* v. *State, ex rel.* (1905), 35 Ind. App. 379, 74 N. E. 260; *Pake* v. *Wilson* (1899), 127 Ala. 240, 28 So. 665; *Williams* v. *Auten* (1901), 62 Nebr. 832, 87 N. W. 1061; *Swigart* v. *Gentert* (1901), 63 Nebr. 157, 88 N. W. 159; *Matteson* v. *Moone* (1903), 25 R. I. 129, 54 Atl. 1058; *Atlas Lumber Co.* v. *Flint* (1905), 20 S. D. 118, 104 N. W. 1046; *Johnson* v. *Bank* (1906), 60 W. Va. 320, 55 S. E. 394, 9 Ann. Cas. 893; *Wood* v. *Dodge* (1909), 23 S. D. 95, 120 N. W. 774; *Walker* v. *Richards* (1859), 39 N. H. 259; *Miller* v. *Adams* (1909), 142 Iowa 515, 119 N. W. 593; *Cahill* v. *Bigelow* (1836), 18 Pick. (Mass.) 369; *Welch* v. *Marvin, supra; Hurst Hardware Co.* v. *Goodman* (1910), 68 W. Va. 462, 69 S. E. 898, 32 L. R. A. (N. S.) 598, Ann. Cas. 1912B 218; *Alexander* v. *Dove* (1918), 231 Mass. 362, 121 N.

E. 74, *Boykin* v. *Dohlonde & Co.*, *supra;* *Moses* v. *Norton* (1853), 36 Me. 113, 58 Am. Dec. 738; *Norris* v. *Graham* (1870), 33 Md. 56.

As was said by this court in *Miller* v. *State, ex rel.,* *supra:* "When the credit has been given by the plaintiff, not to the defendant, but to a third person as the purchaser of goods, or .the person for whom work is done, the undertaking, if any, of the defendant is not an original undertaking. If the third person is liable to the plaintiff, this alone deprives the defendant's undertaking of the character of an original contract. 'If any credit at all be given to the third party, the defendant's promise is required to be in writing as collateral. * * * All the cases show that it does not matter upon which of the two parties the plaintiff principally depends for payment, so long as the third party is at all liable to him to do the same thing, which the defendant has engaged to do.' "

And the Supreme Court, in discussing the liability of the person ordering the goods, said: "It is certainly true in a legal sense that where goods are furnished by one party upon the order, or at the special instance and request, of another, that the person who gives the order or makes the request that they be furnished for the use of some third party will be considered as the purchaser, and not the party to whom the goods are furnished in pursuance of such order or request. The debt incurred thereby will be that of the person making the order or request that the goods be furnished, and he alone will be liable. An unconditional parol promise of a person to pay for goods furnished at his special instance and request to a third party is not violative of the statute of frauds, which requires that a promise to answer for the debt of another shall be in writing." *Cox* v. *Peltier* (1902), 159 Ind. 355, 65 N. E. 6.

The form of the promise does not necessarily con-

trol, for many promises which in form are absolute, and would be regarded in law as an original promise, so as to make the debt that of the promisor, and not of the party receiving the goods, may, under certain circumstances, be adjudged to be collateral, and within the statute. As was said in *Davis* v. *Patrick* (1891), 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826: "The real character of a promise does not depend altogether upon the form of expression, but largely on the situation of the parties; and the question always is, what the parties mutually understood by the language— whether they understood it to be a collateral or a direct promise." For an illustration see *Sherman* v. *Alberts* (1908), 153 Mich. 361, 116 N. W. 1094, 126 Am. St. 486. As has been frequently said, the intention of the parties must be regarded. *Johnson* v. *Bank, supra; Harris* v. *Frank* (1889), 81 Cal. 280, 22 Pac. 856; *Atlas Lumber Co.* v. *Flint, supra.*

We deem it proper to say that the fact that the goods were charged to Harris and appellant is not conclusive that appellee extended credit to Harris or looked to him for payment. *Lance* v. *Pearce* (1885), 101 Ind. 595, 1 N. E. 184; *Leisman* v. *Otto* (1866), 1 Bush (64 Ky.) 225; *Johnson* v. *Bank, supra.*

We will now turn our attention specifically to appellant's contention that the finding is not sustained by sufficient evidence. Appellee testified that in the fall of 1922, Harris came to appellee's store and wanted to buy groceries on time, and that he was told he could only buy a week at a time and would have to pay every Saturday. That in October or November, 1922, appellant and Harris came in the store, and appellant put his hand on Harris' shoulder and said: "I am going to California and this boy is going to take care of my stock, look after things for me and I want him to have

stuff plenty to eat and when I get back I will pay for it."
He then let Harris have groceries and charged them to
him.   Later, he began to charge the bills to appellant
and Harris.   Appellant got none of the groceries.   They
were all delivered to Harris.   Did not see appellant
again until some time in the fall of 1923, when he came
in appellee's store and when he asked appellant about
the Harris bill.   When told the amount of the bill,
$120.56, appellant said he thought Harris had paid it,
that he would see Harris, as he did not feel like paying
it.   The account was kept on slips, and when Harris
made payments, the original slips were delivered to him
and the slips kept simply showing the balance due.

The first slip introduced in evidence, in point of time,
shows a balance of $82.75 due June 23, 1923, and no
slips showing the sales or payments prior to that day
were introduced in evidence.   Appellee kept no record
or account showing the sales prior to June 23, 1923.
All he had on that day was a slip showing the balance
due.   He kept a copy of the sales tickets after that date.
These were introduced in evidence, and show over 200
sales between that date and November 3, 1923, when
there was a balance of $120.56 due.   During this time,
these slips show that Harris made thirteen payments,
aggregating $163.45.   Of the sales tickets introduced
in evidence, about twenty-five were made out showing
sales to Harris, the balance being made out in the names
of appellant and Harris.

Grover Harris, in his testimony, corroborated the tes-
timony of appellee as to the conversation at the store
concerning appellant's agreement to pay for the gro-
ceries.   He testified that Mr. Symons went to California
in November, 1922, and got back the following Febru-
ary.   That he worked for Symons seventeen months,
worked for him until November, 1923.   He bought gro-
ceries of appellee while appellant was gone and paid

some on the bills. Had no conversation with appellant about the bills until a meeting in the office of appellee's lawyer, which was after he had quit working for appellant. Appellant had not hired him to work for him while he was in California and did not pay him anything during that time. He was to take care of appellant's things while he was gone and to get his pay from the milk, chickens, and the use of a team. That he was not expecting appellant to pay appellee.

Appellant denied having gone to appellee's store and having had the conversation testified to by appellee. He testified that when he went to Niagara Falls in July, 1922, he had a conversation in which he asked appellee to "carry" Harris until he got back when he would see that Harris got paid. That appellee never said anything to him about Harris owing him until a month or two after Harris had quit working for appellant in 1923. Other witnesses testified, but their testimony is only corroborative of the testimony heretofore related.

Appellee makes no claim that there was a joint sale to appellant and Harris and that there was a joint liability. The finding of facts and the judgment is based upon the theory that there was a separate and several liability on the part of appellant and Harris, and the finding, if sustained, must be sustained on that theory. It cannot be sustained on any other theory. Appellee does not claim that he looked solely to appellant to pay for the groceries which he let Harris have. Nor does he make any claim that he did not expect Harris to pay for them. We think the record in this case conclusively shows that he did extend credit to Harris and that he believed Harris was liable to him for the amount of the bill. He filed his complaint herein in which he alleged that Harris was indebted to him for the goods delivered to him, and he recovered a judgment against Harris for the amount due.

In *Williams* v. *Auten, supra,* appellees sued Williams and one Welty to recover for goods furnished Welty at the request and on the credit of Williams. After calling attention to the complaint, which, as here, asked for a judgment against the person receiving the goods and the person making the promise, and after reviewing the evidence, the court said: "We are disposed to the view that the evidence is sufficient to support a finding that Williams was liable as the party with whom the contract was made as the promisor in an original undertaking, and to whom the credit was extended and the goods sold, although for the benefit of and delivered to another, except for that which appears in the record from the pleadings and the evidence, and which conclusively shows that the contract was made with, and the goods sold to Welty, and credit extended to him as well as to Williams. * * * In this case the contract was made with and the goods sold to either Williams or Welty, but not to both of them. There is nothing in the record warranting the inference of a joint liability. The nature of the transaction and the circumstances surrounding the same, conclusively negative the idea of joint obligation. If one is liable under the agreement, the other is not. Both cannot be held jointly for the goods obtained by and delivered to Welty under the account sued on. * * * We are of the opinion that the question hinges and must turn on the action of the parties under and in pursuance of the alleged agreement, and especially of the plaintiffs, in what they have said and done with reference to the credit extended to and liability sought to be imposed on the defendant Welty. They have obtained a judgment against him which could have been done only on the theory that the contract for the sale of the merchandise sued for was made with him and that he thereby became legally liable for the payment of the value thereof. They charged the

goods to him, and he made and was credited on the account with certain payments. While this is not conclusive standing alone, when taken in connection with other action of the plaintiffs, it admits of no other conclusion than that the credit was extended to Welty. They demanded payment of him before beginning the action. They sold the goods relying on Williams' agreement to see that they were paid for. They demanded payment also of him. What then must be the true character of the contract under plaintiffs' own version of the transaction and to which they are solemnly and irrevocably committed by their actions as shown by the pleadings and the evidence? The liability of the defendants, as has been stated, cannot be that of joint debtors. The essential requirements of a joint obligation are altogether wanting. Both defendants cannot then be held as principals, and the liability of one, therefore, must be secondary. Welty's liability cannot be of a secondary character; his obligation is that of a principal, or it does not exist. Williams' liability may be, and must, we think, be conclusively held to be such under the pleadings and the evidence." It was there held that Williams' liability was collateral and the judgment was reversed with directions to dismiss the action as to him.

And following the same line of reasoning, we hold that appellee, in suing Harris and taking judgment against him, conclusively shows that he was primarily liable and that appellant's agreement was collateral and within the statute. This being true, the finding of the court is not sustained by the evidence.

Judgment reversed, with directions to sustain the motion for a new trial and for further proceedings consistent with this opinion.