**HENRY C. BECK COMPANY, Plaintiff-Appellant,**

v.

**FORT WAYNE STRUCTURAL STEEL COMPANY, Defendant-Appellant,**

and

**Martin, Incorporated, Defendant-Appellee.**

Nos. 82–2134, 82–2135.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1983.

Decided March 8, 1983.

Arthur G. Surguine, Jr., Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, Ind., for plaintiff-appellant.

James P. Fenton, Barrett, Barrett & McNagny, Fort Wayne, Ind., for plaintiff-appellee.

George E. Fruechtenicht, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, Ind., for defendant-appellee.

Before PELL, CUDAHY, and POSNER, Circuit Judges.

PELL, Circuit Judge.

In this diversity case, the plaintiff, Henry C. Beck Co. (Beck), and defendant Fort Wayne Structural Steel Co. (FWSS), appeal from the district court's dismissal of Beck's claim and FWSS's cross-claim against Martin, Inc. (Martin) for indemnification. Beck and FWSS seek indemnification for amounts paid a Martin employee in settlement of the employee's damage suit against Beck. The primary issues on appeal are whether the claim and cross-claim are barred by either the statute of frauds or the exclusive remedy provision of the Indiana Workmen's Compensation Act.

## I. FACTS

Beck, a Texas corporation, contracted to build an office building in Fort Wayne, Indiana. Beck entered into a subcontract with FWSS, an Indiana corporation. FWSS was to supply and erect structural steel and metal decking for the building and was to furnish the necessary materials, tools, equipment, and labor for this aspect of the construction.

The written contract between Beck and FWSS contained an indemnity provision. Paragraph 7, the portion of the contract stating the terms of indemnification, provides in pertinent part:

> The Subcontractor shall indemnify and hold harmless the Agent, the Owner and the Architect, and their agents and employees, from and against all claims, damages, losses and expenses, including attorneys' fees, arising out of or resulting from the performance of the Subcontractor's Work under the Contract Documents, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder.... [T]he indemnification obligation under this Paragraph 7 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workmen's compensation acts, disability benefit acts or other employee benefit acts.

FWSS then subcontracted the actual erection of the structural steel and metal decking to Martin, which is similarly an Indiana corporation. The contract between FWSS and Martin was oral. Martin agreed to be bound by the contract between FWSS and Beck. Pursuant to its agreement with FWSS, Martin furnished Beck and FWSS a certificate of insurance. The certificate of insurance explicitly recites Paragraph 7 of the Beck-FWSS contract, including the clause stating that the indemnification obligation is not limited by "compensation or benefits payable by or for the Subcontractor under workmen's compensation acts."

On August 20, 1975, James Wiist, a Martin employee, was injured while working on the construction project. The workmen's compensation carrier for Martin paid benefits to Wiist.

On August 19, 1977, Wiist filed suit against Beck, seeking damages for his injuries. In his complaint, Wiist alleged the negligence of Beck but made no mention of any negligence by Martin or FWSS.

On September 19, 1977, Beck filed a third-party complaint for indemnification against FWSS. Subsequently, Wiist's suit was settled for $175,000.00. Beck paid $50,000.00 of the amount and FWSS paid the remaining $125,000.00.

On July 17, 1980, Beck filed the instant suit, seeking indemnification from FWSS and Martin. FWSS filed a cross-claim against Martin for indemnification. Martin subsequently moved to dismiss the claim and cross-claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. Martin's motion was granted by the magistrate and was entered as a final judgment pursuant to Rule 54(b), Fed.R.Civ.P. 54(b).

## II. PRELIMINARY ISSUES

■ Before turning to the principal legal questions raised by these appeals, several preliminary matters must be resolved. First, Martin asserts that there was no "understanding" and certainly no express contract between it and FWSS regarding indemnification. In reviewing the grant of a motion to dismiss pursuant to Rule 12(b)(6), however, we must consider the complaint in the light most favorable to the claimant. *Illinois Migrant Council v. Campbell Soup Co.*, 519 F.2d 391, 394–95 (7th Cir.1975), and must resolve every reasona-

ble doubt in favor of the claimant, *Burns v. Paddock,* 503 F.2d 18, 25 (7th Cir.1974). For purposes of this appeal, we must assume that Martin did agree orally to be bound by all terms of the Beck-FWSS written contract and that Martin understood Paragraph 7 of that contract to be an explicit agreement of indemnity.

Second, Beck's brief discusses at some length why it was improper for the district court to dismiss the claim and cross-claim on the ground that the indemnification agreement failed to meet the stringent standards applicable to an agreement to indemnify a party for his own negligence. The decision and order below, however, both explicitly state that the dismissal is based on the applicability of the statute of frauds and the policy underlying the exclusive remedy provision of the Indiana Workmen's Compensation Act. Even a cursory reading of Paragraph 7 suggests that the right to indemnification from Martin exists only if Martin's negligence were at least a part of the cause for Wiist's injuries. We therefore conclude that the district court neither could properly have nor in fact did dismiss the claims on this ground.[1]

Finally, Martin urges on appeal that it has no duty whatsoever to Beck because there was no contract between the two parties. Martin's argument must fail, however, if an enforceable contract existed between FWSS and Martin and if Beck was the intended third-party beneficiary of that contract. *E.g., Miller v. Farr,* 178 Ind. 36, 98 N.E. 805 (1912).

■ The alleged terms of the FWSS-Martin contract were that Martin agreed to be bound to Beck by the same terms and conditions as FWSS was. Those terms and conditions include the indemnity provision of Paragraph 7. Agreeing to be so bound is strong evidence that Beck was indeed the intended third-party beneficiary.

The certificate of insurance supports this view. Beck, which is termed the "Agent" on the certificate, is assured ten days prior notice of any cancellation or material change in the insurance. The indemnity provision, which is listed as one of the insured risks, is identical to Paragraph 7 of the Beck-FWSS contract.[2] The certificate of insurance is entirely consistent, therefore, with the terms of the FWSS-Martin oral contract: Beck was the beneficiary of the indemnity provision.

The final aspect of Martin's argument on this issue is that Martin's insurer (as opposed to Martin) undertook only an obligation to guarantee FWSS's performance of the indemnification provision. No obligation existed unless and until FWSS refused to perform. This argument is not persuasive. The insurance certificate Martin provided Beck does not explicitly mention FWSS, let alone condition Martin's liability on FWSS's nonperformance. The certificate, on its face, is consistent with Martin's having agreed to be bound to Beck in the same manner as FWSS was. The interpretation urged by Martin does not provide a grounds for dismissal of the Beck and FWSS claims.

### III. STATUTE OF FRAUDS

The district judge relied in part on the statute of frauds in dismissing the claims against Martin. Section 32–2–1–1 of the Indiana Code provides:

> Sec. 1. No action shall be brought in any of the following cases: . . .
>
> Second. To charge any person, upon any special promise, to answer for the debt, default or miscarriage of another; . . .
>
> Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith.

Ind.Code § 32–2–1–1 (Burns 1980). The issue is whether the FWSS-Martin contract

---

1. Whether Martin was in fact partially or wholly negligent has not been litigated and cannot be decided on the record as it now stands.

2. The certificate omits the final portion of Paragraph 7, not quoted *supra,* which deals with the obligation to obtain insurance pursuant to the promise of indemnification.

was one within the scope of this statutory provision.

Martin's primary argument, in support of the district court's holding, is that its agreement with FWSS falls within the literal language of Section 32–2–1–1 because the appellants seek recovery from Martin on the debt owed by Beck, by virtue of Beck's own negligence, to Wiist. Martin asserts that he is being asked therefore to "answer for the debt, default or miscarriage of another." An initial flaw in this argument is that it assumes both that Beck was the sole negligent party and that the Paragraph 7 indemnification agreement establishes Beck's right to be indemnified by Martin (or FWSS) if the negligence is wholly attributable to Beck. As discussed in Section II, *supra,* the clear language of the agreement appears to preclude the right to indemnification if Beck is solely liable. More importantly, neither of the assumptions upon which Martin relies was decided below. In determining the applicability of the statute of frauds to the indemnification agreement, we must assume, for purposes of reviewing this Rule 12(b)(6) dismissal, that the negligence which resulted in Wiist's injuries is at least partly attributable to Martin.

We are aware of no Indiana case, nor any decision from another jurisdiction, addressing the applicability of the statute of frauds to an agreement like that at issue in this case. *Cheesman v. Wiggins,* 122 Ind. 352, 23 N.E. 945 (1890), upon which both the magistrate [3] and Martin rely, establishes that some agreements termed ones of "indemnity" fall within the statute. See also 3 S. Williston, *A Treatise on the Law of Contracts,* § 482, at 486–87 (3d ed. 1960). The agreement at issue in *Cheesman,* however, has little similarity to the FWSS-Martin agreement. One difference, which we find critical, is that the so-called "indemnitor" in *Cheesman,* Stephen Wiggins, had promised the *creditor,* Cheesman, that he would be responsible for any loss that Cheesman suffered as a result of paying the entire partnership debt owed by the creditor and Andrew Wiggins.

Just as there is no magic to the label "indemnity agreement," characterizing the agreement as a "primary obligation" or a "collateral obligation" is an unreliable approach to resolving the statute of frauds issue because whether an agreement is termed "primary" or "collateral" depends largely upon the court's view of the intent of the parties to the agreement, *Symons v. Burton,* 83 Ind.App. 631, 149 N.E. 460, 461 (1925), and quite frequently courts use these terms in stating conclusions rather than in providing a workable test for analyzing an agreement, J. Murray, *Law of Contracts* § 316, at 650 (2d rev. ed. 1974); see S. Williston, *supra,* § 465, at 402.

There are, however, well-established rules pertaining to the applicability of the statute of frauds that aid our analysis. First, it is a matter of hornbook law that the statute of frauds applies only to a promise between a creditor and a third party. If the promise is between the debtor and the third party, the oral agreement is not within the statute. J. Murray, *supra,* § 314, at 648; *accord,* S. Williston, *supra,* § 460, at 389 & n. 1; 2 A. Corbin, *Corbin on Contracts,* § 357, at 241 & n. 96 (1950). This is true even though the literal language of the statute would encompass a third person's promise to a debtor, J. Murray, *supra,* § 314, at 648 n. 36, and the rule applies even if the third party *also* promises the creditor, A. Corbin, *supra,* § 357, at 243.

This rule has long been followed by Indiana courts. For instance, in *Crim v. Fitch,* 53 Ind. 214 (1876), Fitch had purchased a threshing machine from Aultman and Taylor. At the time Fitch decided to sell the machine to Crim, he still owed Aultman and Taylor a balance on the debt. Fitch and Crim orally agreed that Crim would pay the remaining debt to Aultman and Taylor as part of the consideration for the purchase of the machine. Crim received the machine and eventually resold it. He never paid any

---

**3.** The other two cases upon which the magistrate relied, *Norkus v. General Motors Corp.,* 218 F.Supp. 398 (S.D.Ind.1963), and *Indiana* *State Highway Comm'n v. Thomas,* 169 Ind. App. 13, 346 N.E.2d 252 (1976) do not involve any statute of frauds issue.

part of the debt to Aultman and Taylor. Aultman and Taylor successfully sued Fitch. Fitch, in turn, sued Crim and recovered. In affirming that result, the Supreme Court of Indiana discussed whether the Fitch-Crim agreement was one to "answer for the debt, default, or miscarriage of another." The court stated:

> We think it was not. Crim's promise was not made to Aultman and Taylor, but to Fitch to pay Fitch's debt to Aultman and Taylor.... If Crim's promise had been to Aultman and Taylor, to pay Fitch's debt to them, it would have been within the statute, and Aultman and Taylor could not have enforced the promise, unless it had been made in writing and properly signed.

*Id.* at 215. A later Indiana case, relying on *Crim*, held that the oral promise of an assignee to a lease that he would pay the rent of the assignor was enforceable. *Wolke v. Fleming*, 103 Ind. 105, 2 N.E. 325 (1885). The *Wolke* court noted that the rule exempting an agreement between a third party and a debtor from the statute of frauds was supported by "decisions ... from nearly all the courts of the Union." 2 N.E. at 327.

Indiana courts have also recognized that when a third party promises a debtor that he will pay the debtor's debt to a creditor, the creditor has a right of action against the third party. *E.g., Edwards v. Van Cleave*, 47 Ind.App. 347, 94 N.E. 596 (1911). In *Edwards*, two real-estate brokers, Smith and Walkup, had promised to pay Van Cleave one-third of the commission resulting from the sale of the appellants' land. After the sale was consummated, the appellants paid Smith and Walkup two-thirds of the total commission and promised to pay the remaining third directly to Van Cleave. They did not do so. Van Cleave sued the appellants. The appellate court affirmed the judgment for Van Cleave, noting that the relevant "contract" was the appellants' promise to Smith and Walkup that they would pay the one-third commission directly to Van Cleave. The court stated: "A third party may maintain an action on a contract made for his benefit.... Such promise to pay the debt of another does not fall within the statute of frauds." 94 N.E. at 597 (citations omitted). *Edwards* is support for the propositions that the FWSS-Martin contract is not within the statute of frauds and that Beck may recover from Martin pursuant to that contract.

■ Application of the *Crim* rule to the present case compels the conclusion that the FWSS-Martin oral agreement is not within the statute of frauds. Martin's promise was made to a potential "debtor" rather than to any party that could plausibly be termed a creditor. The most straightforward analysis of the facts is that Martin's promise was made to FWSS and that FWSS was a potential debtor as to Beck. Even if one construes the promise more broadly, recognizing that Beck was an intended beneficiary of the promise, and analyzes Martin's promise as one to Beck, Beck would be the potential debtor of a third party, who, in fact, was Wiist.

Other lines of authority support the conclusion that the FWSS-Martin promise falls outside the statute of frauds. We touch on these only briefly because the *Crim* rule is dispositive. One line of analysis, suggested by several of the cases upon which Beck relies, is that Martin promised to do no more than pay his *own* debt. This argument is consistent with the language of Paragraph 7 that appears to condition the indemnification obligation on negligence in part attributable to the subcontractor. There is no question that Indiana courts hold an agreement to pay what is essentially one's own debt to be outside the statute of frauds. *William Deering & Co. v. Armstrong*, 14 Ind.App. 44, 42 N.E. 372 (1895); *see also Gates v. Fauve*, 74 Ind.App. 382, 119 N.E. 155 (1918) (implied obligation to reimburse plaintiff to extent he discharged defendant's portion of joint obligation).

Appellant FWSS urges yet another basis for finding the present contract to be outside the statute: its similarity to a contract of insurance. FWSS relies on a portion of the Restatement of Security § 82 (1941). The Restatement recognizes that the chief

importance for distinguishing between a "suretyship" and an "indemnity" contract is in cases involving the Statute of Frauds, which generally does not apply to contracts of indemnity. An oral contract of indemnity may generally be enforced but not an oral contract to answer for the debt, default, or miscarriage of another. *Id.* at 237. The Restatement makes the following distinction between the two kinds of contracts:

A contract of indemnity is one where the promisor agrees to save a promisee harmless from some loss, irrespective of the liability of a third person. In this sense, indemnity is synonymous with insurance.

The indemnitor, upon the happening of the stipulated contingency, is liable whether or not the indemnitee has any recourse against a third person. In suretyship, the normal expectation is that the liability will be satisfied by the third person. Indemnity contemplates two parties at least at the time of making the contract. Suretyship always involves three parties.

*Id.* at 236. Applying this distinction to the present case, Martin's promise indeed appears to be one synonymous with insurance. The promise embodied in Paragraph 7 might have been operable between either Martin and Beck or Martin and FWSS without the "presence" of the third party. Further, the language of the agreement does not support the reading that liability would be satisfied by one other than the indemnitor.

■ Finally, Indiana courts recognize that a right to indemnification can arise as a matter of law. *See McClish v. Niagara Machine & Tool Works,* 266 F.Supp. 987, 989 (S.D.Ind.1967). There is a degree of obvious illogic in concluding that indemnification can arise as a matter of law but that any express agreement to indemnify must be in writing in order to be enforceable.

We conclude that the indemnification portion of the FWSS-Martin contract falls outside the statute of frauds provision codified as Section 32–2–1–1 and that Beck, as the intended third-party beneficiary of that contract, is able to maintain an action against Martin on the contract.

## IV. EXCLUSIVE REMEDY PROVISION

■ The second ground upon which the district court relied in dismissing Beck's claim and FWSS's cross-claim was that the suits were inconsistent with the rationale behind the exclusive remedy provision of the Indiana Workmen's Compensation provision, Ind.Code § 22–3–2–6 (Burns 1974). The magistrate had already concluded that any express contract was unenforceable. He relied therefore on two lines of precedent: (1) the rule, recognized by a majority of states, that a third-party tortfeasor has no right of contribution against a contributorily negligent employer who is subject to a workmen's compensation scheme; and (2) cases applying Indiana law in which it was held that the exclusive remedy provision barred an employee's common-law negligence suit premised on a dual capacity theory, *e.g., Kottis v. United States Steel Corp.,* 543 F.2d 22 (7th Cir.1976), *cert. denied,* 430 U.S. 916, 97 S.Ct. 1328, 51 L.Ed.2d 594 (1977).

Our analysis differs from that of the district court because of our conclusion that the statute of frauds is not a bar to enforcement of an express contract between FWSS and Martin.[4] A respected commentator has stated:

When the third party, in a suit by the employee, seeks recovery over against a contributorily negligent employer, contribution is ordinarily denied on the ground that the employer cannot be said to be jointly liable in tort to the employee be-

4. Our disposition of the workmen's compensation issue is premised on the existence of an express contract, as alleged by Beck and FWSS. We decline to determine whether an Indiana court would determine that a third party could recover from an employer, who had met his workmen's compensation obligation, pursuant to an "implied" contract or some other independent duty. We do note, however, as indicated *infra,* that some states recognize a right of indemnification based on such an implied contract.

cause of the operation of the exclusive remedy clause. But if the employer can be said to have breached an independent duty toward the third party, or if there is a basis for finding an implied promise of indemnity, recovery in the form of indemnity may be allowed. The right to indemnity is clear when the obligation springs from a separate contractual relation.

2A A. Larsen, *Workmen's Compensation* § 76.00.

Consistent with the distinction expressed by Larsen, courts have recognized the right of a third party to be indemnified by an employer subject to a workmen's compensation act if the third party and employer were bound by an express contract of indemnification. *Roy v. Star Chopper Co.,* 584 F.2d 1124 (1st Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979) (Massachusetts law would recognize right to indemnity if express or implied contractual relationship existed); *Hysell v. Iowa Public Service Co.,* 534 F.2d 775 (8th Cir.1976) (right to indemnification under Iowa law if obligation arises out of separate duty of employer); *Gordon H. Ball, Inc. v. Oregon Erecting Co.,* 273 Or. 179, 539 P.2d 1059 (Or.1974) (en banc) (right to indemnification if obligation arises out of independent duty of employer); *Montoya v. Greenway Aluminum Co.,* 10 Wash.App. 630, 519 P.2d 22 (1974) (right to indemnification only if express contract); *Dale v. Whiteman,* 388 Mich. 698, 202 N.W.2d 797 (1972) (right to indemnification if express or implied contract); *see also* A. Larsen, *supra,* §§ 76.40–76.42.

Nothing in the rationale of the Workmen's Compensation Act precludes an employer from voluntarily waiving the immunity provided by that Act. If the allegations of the Beck and FWSS claims against Martin are true, such an express contract of indemnification existed and Beck and FWSS are not precluded from recovering against Martin.

## CONCLUSION

Neither the statute of frauds nor the Indiana workmen's compensation scheme precludes enforcement of the oral indemnification contract. Whether the terms of the contract were as alleged by Beck and FWSS and whether Martin has a duty to indemnify Beck and FWSS in the instant case are issues neither decided below nor properly before this court on appeal.

Having considered all the arguments urged by the parties, the judgment of the district court dismissing the claims against Martin is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.