**D.O. McCOMB & SONS, INC. and Terra Services Incorporated, Plaintiffs,**

v.

**MEMORY GARDENS MANAGEMENT CORP., INC.; Covington Memorial Gardens, Inc.; Fred W. Meyer, Jr.; Donald Grose; The Lindenwood Cemetery, Inc.; and Highland Park Cemetery, Inc., Defendants.**

Civ. No. F 89–157.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

May 10, 1990.

Vincent J. Backs, James P. Posey, George P. Mallers; Beers, Mallers, Backs & Salin, Fort Wayne, Ind., for plaintiffs.

Craig Pinkus, Donna Bayes–Beinart, Dutton & Overman, Indianapolis, Ind., for Highland Park Cemetery.

James P. Fenton, Robert S. Walters, Barrett & McNagny, Fort Wayne, Ind., for Lindenwood Cemetery.

Walter P. Helmke, J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, Ind., Paul J. DeVault, James G. McIntire, Krieg, DeVault, Alexander & Capehart, Indianapolis, Ind., for remaining defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on several motions to dismiss filed by the defendants. The parties have fully briefed the issues. For the following reasons the motions will be denied.

## STANDARD FOR DISMISSAL

In deciding a motion to dismiss for failure to state a claim, this court must take the well pleaded factual allegations of the plaintiff's complaint as true. *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.1980). The complaint must be considered in the light most favorable to the plaintiff and every doubt must be resolved in the plaintiff's favor. *Henry C. Beck Co. v. Fort Wayne Structural Steel*, 701 F.2d 1221 (7th Cir.1983). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nonetheless, a complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591, 594 (7th Cir.1986). "The heavy costs of modern federal litigation ... counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984).

## BACKGROUND

The relevant facts in this case are as follows. Plaintiff D.O. McComb & Sons, Inc. (McComb), an Indiana corporation, is engaged in the business of undertaking, embalming, and directing of funerals of deceased persons; the building, maintenance or leasing of funeral chapels and funeral homes; the business of selling coffins, caskets, and vaults; the business of selling the service of the opening and closing of gravesites; and the business of selling and installing monuments. Plaintiff Terra Services Incorporated (Terra Services), an Indiana corporation, is a wholly owned subsidiary of plaintiff McComb and is engaged in the business of selling the service of the opening and closing of gravesites, and the business of selling and installing monuments. The defendant Memory Gardens Management Corp., Inc. (Memory Gardens), is an Indiana corporation engaged in the ownership, management, and operation of cemeteries and funeral homes. Defendants Covington Memorial Gardens, Inc. (Covington), the Lindenwood Cemetery, Inc. (Lindenwood), and Highland Park Cemetery, Inc. (Highland), are Indiana corporations which are engaged in the sale of gravesites, the sale of the service of opening and closing gravesites, the maintenance of cemeteries, interment, the sale of vaults and the sale of monuments. Defendant Fred W. Meyer,

Jr. (Meyer) is the President, Chief Executive Officer, Chief Operating Officer, and a primary owner of defendant Memory Gardens. Meyer is also the President of defendant Covington. Defendant Donald Grose (Grose) is the manager of defendant Covington.

This action originated on June 29, 1989, when plaintiff Terra Services filed its complaint against Memory Gardens, Covington, Meyer, and Grose. An amended complaint, filed on October 10, 1989, named McComb as an additional plaintiff. Lindenwood and Highland were named as additional defendants. The amended complaint seeks injunctive relief, treble damages, costs and attorney fees for the defendants' alleged violations of Sections 1 and 2 of the Sherman Anti-trust Act, Title 15 U.S.C. §§ 1, 2, and the Indiana Anti-trust Laws, I.C. §§ 24–1–2–1 and –2.

The thrust of plaintiffs' complaint is that the defendants have violated the anti-trust laws by excluding the plaintiffs from the market of opening and closing gravesites. The plaintiffs allege that when the defendants sell a cemetery plot they require the buyer to contractually agree to abide by the cemetery's internal policies, rules, and regulations. Plaintiffs further allege that all of the defendants have internal policies, rules, and regulations which require the owner of a plot within one of the defendants' cemeteries to use that cemetery to perform the service of opening and closing the grave, for which an additional fee is charged. Plaintiffs assert that defendants' acts have been creating a monopoly situation for the defendants as well as illegally tying the service of opening and closing gravesites to the sale of the grave plots.

## ANALYSIS

As noted, plaintiffs have alleged, *inter alia,* that the defendants have engaged in a tying arrangement in violation of Sections 1 and 2 of the Sherman Anti-trust Act, 15 U.S.C. §§ 1, 2. Section 1 of the Sherman Anti-trust Act prohibits a "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the states...."

15 U.S.C. § 1. Section 2 of the Sherman Anti-trust Act makes it unlawful to monopolize or attempt to monopolize "any part of the trade or commerce among the several States...." 15 U.S.C. § 2. Each of the defendants claim that the plaintiffs have failed to state a claim upon which relief can be granted under the anti-trust act and that the plaintiffs' complaint should therefore be dismissed. Specifically, the defendants contend that the plaintiffs have failed to sufficiently allege that the defendants' alleged tied product, the opening and closing of gravesites is in, or has an effect upon, interstate commerce as required by the plain language of the Sherman Anti-trust Act.

In *Rosebrough Monument Company v. Memorial Park Cemetery Association,* 666 F.2d 1130, 1140–41 (8th Cir.1981), the court stated:

A tying arrangement is defined as the sale or lease of one item (the tying product) on the condition that the buyer or lessee purchase a second item (the tied product) from the same source.

\* \* \* \* \* \*

Tying arrangements are presumptively illegal if three elements exist.... First, there must be two distinct products or services. Second, the defendant must have sufficient economic power in the tying market to impose significant restrictions in the tied product market. Finally, the amount of interstate commerce in the tied product market must not be insubstantial. (Citations omitted).

In *Seglin v. Esau,* 769 F.2d 1274, 1280 (7th Cir.1985), the Seventh Circuit discussed the requisite connection between the defendants' activity and interstate commerce:

[T]o survive a motion to dismiss, the "plaintiff must allege sufficient facts concerning the alleged violation and its likely effect on interstate commerce to support an inference that the defendants' activities infected by illegality either have had or can reasonably be expected to have a not insubstantial effect on commerce."

Defendants assert that the plaintiffs' complaint lacks any factual specifications as to an involvement of interstate commerce or any effect upon such commerce, as a result of the alleged refusal of the defendants to permit the plaintiffs to open and close graves in cemeteries owned or controlled by defendants. Defendants take the position that the opening and closing of graves are distinctly local acts, and deterring the plaintiffs from performing such acts has no adverse effect upon interstate commerce.

Turning to the plaintiffs' complaint the court notes that the plaintiffs have set out ten pages of data, statistics, and figures to support their allegations that the defendants engage in a substantial amount of interstate commerce. The plaintiffs' data includes the quantities, costs, etc., for deaths in Allen County, method of disposal for bodies, burials in Allen County and at each of the defendants' cemeteries, funerals in Allen County, gravesite opening and closings, monuments or markers, interstate shipment of bodies, sale of cemetery lots, use of the telephone and mails by defendants, and use of equipment for grave opening and closing. The complaint further notes (with respect to funds expended for funerals, cemetery lots, opening and closing of gravesites, and memorial markers) the amount of funds expended by out-of-state insurance companies engaged in interstate commerce, the amount of funds expended by out-of-state relatives or estates, and the amount of funds expended by various Federal programs, including Social Security and Veterans benefits. In spite of plaintiffs' commendable efforts to make properly sufficient allegations under the Sherman Anti-trust Act, the defendants still maintain that the plaintiffs' complaint should be dismissed. Defendants argue that the plaintiffs' data concerns other aspects of the funeral/burial industry other than the service of opening and closing a grave, and that this data should not be considered in determining whether the activity of opening and closing gravesites has a substantial effect on interstate commerce.

In response, plaintiffs contend that, contrary to defendants' assertions, the service of opening and closing a gravesite involves more than the local act of digging a hole and filling it up again. According to plaintiffs, the defendants' alleged illegal conduct of tying the sale of a cemetery lot to their service of opening and closing the grave is part of the entire funeral/burial process involving the shipment of bodies, vaults, markers, etc., across state lines as well as the receipt of Federal monies and interstate insurance monies.

Plaintiffs direct the court's attention to *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), and *McLain v. Real Estate Bd.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). In *McLain* the United States Supreme Court held that the broad authority of Congress under the Commerce Clause has been interpreted to extend beyond activities actually *in* interstate commerce to reach other activities which, while wholly local in nature, nevertheless substantially *affect* interstate commerce. The Court further held that the requirements for suit under the Sherman Anti-trust Act may be satisfied under either the "in commerce" or the "effect on commerce" theory. Plaintiffs submit that the defendants' activity is itself *in* interstate commerce and that it also has a substantial *effect on* interstate commerce.

In *Goldfarb*, the issue before the United States Supreme Court was whether a title examination performed by lawyers was local or, although local, whether it was an integral part of an interstate transaction. The Court held that:

[A] title examination is an integral part of an interstate transaction and this Court has long held that 'there is an obvious distinction to be drawn between a course of conduct wholly within a state and conduct which is an inseparable element of a larger program dependent for its success upon activity which affects commerce between the states.' Given the substantial volume of commerce involved, and the inseparability of this particular legal service from the interstate aspects of real estate transactions, we conclude that interstate commerce has

been sufficiently affected. (Citations omitted).

*Goldfarb, supra,* 95 S.Ct. at 2011–12.

Plaintiffs argue that the sale of cemetery lots and the opening and closing of graves, like a title examination, is an integral part of an interstate transaction and that under existing laws, one cannot have a funeral/burial without the lot and the opening and closing of the grave. Plaintiffs allege that the combined market share of the defendants for the sales of burial plots and opening and closing services with respect to the funeral/burials in Allen County, Indiana is approximately 60% and therefore a substantial volume of commerce between the states is involved in the burial process. Plaintiffs conclude that, based on *Goldfarb,* the business of opening and closing graves is "in interstate commerce" and thus the plaintiffs' federal anti-trust claims should not be dismissed.

In *McLain,* the defendant's alleged illegal conduct was the systematic use of fixed real estate commission rates. The defendant maintained that the real estate brokerage business is local and not an integral nor inseparable part of the general transaction of purchasing a home, which necessarily involves interstate commerce. In response to the defendant's position, the Supreme Court stated:

> To establish federal jurisdiction in this case, there remains only the requirement that respondents' activities which allegedly have been infected by a price-fixing conspiracy be shown "as a matter of practical economics" to have a not insubstantial effect on the interstate commerce involved.

*Id.* at 511.

The Supreme court in *McLain* then went on to hold that the plaintiffs had satisfied the Sherman Act's jurisdictional requirements under the "effect on commerce" theory. The basis of this holding was that the brokerage business is an integral and inseparable part of the larger transaction of purchasing a home. Similarly, the plaintiffs in the present case argue that the defendants alleged illegal conduct of tying the sale of a cemetery lot to their service of opening and closing the grave is part of the entire funeral/burial process involving shipments across state lines as well as the receipt of federal monies and interstate insurance monies. Therefore, plaintiffs conclude, the court must look at plaintiffs' allegations and examine them for facts and inferences concerning the tied market to see its likely affect on interstate commerce. Plaintiffs maintain that the data, statistics and figures which plaintiffs have set out in their complaint fulfill the "effect on commerce" test.

After reviewing the plaintiffs' complaint, accepting the allegations therein as true, and making all reasonable inferences therefrom in favor of the plaintiffs, the court finds that the plaintiffs have sufficiently alleged that the defendants' activity substantially affects interstate commerce, and also that plaintiffs have sufficiently alleged that the defendants' activity is itself in interstate commerce.

■ The defendants have raised a number of additional arguments to support their respective positions that the plaintiffs' complaint should be dismissed. Defendants Memory Gardens, Covington, Meyer, and Grose assert that a further element essential to establish an illegal tying arrangement is that the seller must have sufficient economic power in the tying market to impose significant restriction in the tied product market. As stated in *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984):

> [T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. When such "forcing" is present, competition on the merits in the market for the tied item is restrained and the Sherman Act is violated.

However, as discussed above, the plaintiffs have alleged that the defendants control 60% of the burial market in Allen County. This allegation suggests that the defen-

dants can force buyers of grave plots to purchase the service of gravesite opening and closings from the defendant cemeteries, rather than from their competitors, the plaintiff funeral homes. Consequently, the reasonable inference to be drawn from plaintiffs' allegations is that the defendants have engaged in an illegal tying arrangement in violation of the Sherman Anti-trust Act. Therefore, the plaintiffs' complaint sufficiently alleges a cause of action against the defendants.

■ Defendants Memory Gardens, Covington, Meyer, and Grose further assert that they have not engaged in an illegal tying arrangement because they have not tied two distinct products together and thus they have not restrained trade in violation of the Sherman Anti-trust Act.

It is clear, however, that not every refusal to sell two products separately can be said to restrain competition. If each of the products may be purchased separately in a competitive market, one seller's decision to sell the two in a single package imposes no unreasonable restraint on either market, particularly if competing suppliers are free to sell either the entire package or its several parts.

*Id.*

Defendants assert that in this case there is no illegal tie involved, as no one will buy an opening and closing service without having a burial space for its use. However, the correct inquiry is whether one will buy a burial plot from a cemetery and wish to purchase the opening and closing service from someone other than the cemetery from which it purchased the plot. This is precisely why the plaintiffs brought this complaint against the defendants. The plaintiffs allegations are that the defendants have restrained trade in the market of opening and closing gravesites and that they have done this by requiring persons to purchase the service from the cemeteries rather than from the funeral homes. Clearly, there are two distinct products here which consumers may wish to purchase separately from different suppliers.

■ Defendant Highland argues that the plaintiffs' complaint should be dismissed because the complaint does not sufficiently allege a "contract, combination in the form of trust or otherwise, or conspiracy" as required by § 1 of the Sherman Anti-trust Act. Plaintiffs, however, point out that they have specifically alleged that Highland sells cemetery lots to consumers who purchase the lots through a contractual agreement which requires each purchaser to agree to be bound by the rules and regulations promulgated by Highland regarding the use and care of its cemetery, and which coerces and forces each purchaser to agree to purchase the service of opening and closing the gravesite from Highland. Accordingly, plaintiffs submit that with each sale of a cemetery lot, Highland contracts with the purchaser of the lot to tie the sale of the service of opening and closing the gravesite to the sale of the cemetery lot and, thereby, to deny the plaintiffs the economic opportunity to sell their service of opening and closing the gravesite to the customer purchasing the lot in violation of the antitrust act.

In reply, Highland states, without citation to authority, that under the Sherman Anti-trust Act the offending contract must have been between business actors. Highland then states that "[p]eople who pay for a grave to be opened and closed are participating in a burial, not a business." Highland further states that "[t]here is no commercial activity, no transaction, involved in burying one's relatives or friends." The court finds this statement facetious, at best. Clearly, buying a burial plot and contracting to hire the seller of the plot to perform further services is a business transaction. Therefore, plaintiffs have sufficiently alleged that Highland has engaged in a "contract or combination in the form of trust or otherwise, or conspiracy."

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are hereby DENIED.