**BRIGGS & STRATTON CORPORATION, John Shiely, George Thompson III, and Thomas Krukowski, Plaintiffs,**

v.

**NATIONAL CATHOLIC REPORTER PUBLISHING COMPANY, Thomas C. Fox, Leslie Wirpsa and Chris Curry, Defendants.**

No. 96–C–641.

United States District Court, E.D. Wisconsin.

Oct. 23, 1997.

**1196**

Robert E. Sutton, Sutton & McNamara–McGraw, Milwaukee, WI, for Plaintiffs.

Robert J. Dreps, Madison, WI, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (DOC. # 4)

CLEVERT, District Judge.

Before the court is the defendants' Motion to Dismiss pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure (Doc. # 4). For the reasons set forth herein, the motion to dismiss is granted with respect to the plaintiffs' second cause of action under § 895.50(2)(c) Wis. Stats. for invasion of privacy. The motion to dismiss is also granted with respect to certain statements which are non-defamatory on their face. The motion to dismiss is otherwise denied.

The plaintiffs commenced this diversity action after the publication by the defendants of an article, editorial and several graphics in the December 1994 issue of the National Catholic Reporter. The articles chronicle layoffs at Briggs and Strattons' Milwaukee plant and relocation of its facilities. In addition, they discuss the moral, economic and social implications of those decisions. The article quotes several individuals who indicate that the principals of Briggs & Stratton are prominent Milwaukee Catholics, and that the company's management appears to have strayed from the tenets of Catholicism.

The complaint states two claims and request $10 million in compensatory damages, $20 million in punitive damages, attorney fees, costs and expenses. The first cause of action contends that publication of the articles and graphics was defamatory; the second contends that publishing the religious affiliations of the individual plaintiffs is an invasion of privacy under Wis. Stat. § 895.50(2)(c).

The defendants seek dismissal under Rule 12(b)(1) and (b)(6) on five grounds:

1. The court lacks subject matter jurisdiction, under the First Amendment's free exercise of religion clause, to decide the religious issues that comprise the heart of the plaintiffs' defamation claim;

2. The allegedly defamatory implications the plaintiffs draw from the editorial and news articles at issue are opinions that cannot be proved true or false, and accordingly, are entitled to full protection under the state and federal constitutions;

3. The subsidiary statements the plaintiffs challenge in their defamation claim are not actionable as opinion and rhetorical hyperbole in the context of the labor dispute between Briggs & Stratton Corporation and its Milwaukee employees;

4. The plaintiffs cannot establish the essential common law elements of their defamation claim; and

5. The plaintiffs' claim for invasion of privacy does not state a claim upon which relief can be granted under Wis. Stats. § 895.50(2)(c).

In reviewing the sufficiency of a complaint, the court takes the well-pleaded factual allegations as true, *Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir.1981), and considers the facts in the light most favorable to the nonmoving party. *Beck Co. v. Fort Wayne Structural Steel,* 701 F.2d 1221, 1223 (7th Cir.1983). Every reasonable doubt is resolved in favor of the nonmoving party. *Id.* at 1223–24. And, the court's inquiry is generally limited to the factual allegations contained within the four corners of the complaint.[1] *Mann v. Hanil Bank,* 900 F.Supp. 1077, 1083 (E.D.Wis.1995). Furthermore, a motion to dismiss will be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## FREE EXERCISE

The defendants argue that the court lacks subject matter jurisdiction to decide religious issues at the heart of the defamation claim. Relying primarily on *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), the defendants contend that these issues cannot be decided without an impermissible inquiry into religious law and polity and without impermissibly resolving underlying controversies over religious doctrine.

In *Milivojevich,* Michael Milivojevich was removed as bishop of the American–Canadian Diocese of the Serbian Orthodox church. The Illinois Supreme Court reviewed the church process by which Milivojevich was removed, and held that "the proceedings of the Mother Church respecting [Milivojevich] were procedurally and substantively defective under the internal regulations of the Mother Church and were therefore arbitrary and invalid." *Id.* On appeal, the U.S. Supreme Court held that the Illinois Supreme Court contravened the First and Fourteenth Amendments when it "inquired ... into matters of ecclesiastical cognizance and polity" to resolve a church dispute. Where resolution of disputes cannot be made without extensive inquiry into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on

---

1. Under Rule 12(b), if on a motion asserting failure to state a claim upon which relief can be granted, matters outside the complaint are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. The court declines to treat this as a summary judgment motion, and has not relied on the additional materials submitted by the defendants in reaching its decision.

them in their application to the religious issues of doctrine or polity before them.

Similarly, in *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis.2d 302, 533 N.W.2d 780 (1995), a parishioner filed a suit against a priest and the archdiocese after the priest allegedly coerced the plaintiff into sexual relations. The Wisconsin Supreme Court concluded that the First Amendment barred the parishioner's action against the archdiocese for negligent hiring and retention of the priest. It concluded that the First Amendment prevented Wisconsin courts from determining what makes one competent to serve as a Catholic priest, because such a determination would require interpretation of church canons and internal church policies and practices. The court reached the same conclusion with regard to the parishioner's negligent supervision claim. *See also L.L.N. v. Clauder*, 209 Wis.2d 674, 563 N.W.2d 434 (1997).

■ After considering the defendants' arguments and authorities this court finds that it has subject matter jurisdiction over this lawsuit. Disposition of this suit will not inevitably involve analysis of church teachings and policies. Most of the statements at issue address the plaintiff's present and future business decisions, as well as the social and economic consequences of those actions. Analysis of these issues will involve the application of "neutral principles of law," and to that extent excessive government entanglement with religion need not result.

On the other hand, the court does not have jurisdiction over this suit in so far as the plaintiffs are asking the court to interpret church laws, policies or practices. The First Amendment and applicable state law prevent the court from developing a "reasonable Catholic" standard of care. However, to the extent that the articles can be construed as charging the plaintiffs with dishonorable or unethical conduct in their business operations, not related to religion per se, their claims will go forward. *See Converters Equipment Corp. v. Condes Corp.*, 80 Wis.2d 257, 263, 258 N.W.2d 712, 715 (1977) ("words charging dishonorable, unethical or unprofessional conduct in a trade, business or profession are capable of a defamatory meaning").

## OPINION

■ The motion to dismiss must be denied with respect to the defendants' argument that the articles at issue contain opinions that cannot be proven true or false. Wisconsin law recognizes that, "communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs." *Converters Equipment Corp. v. Condes Corp.*, 80 Wis.2d 257, 258 N.W.2d 712, 715 and n. 10 (1977). Where a party blends an expression of opinion with a statement of fact, liability may result. This type of a communication is actionable in Wisconsin if it implies the assertion of undisclosed defamatory facts as a basis for the opinion. Wis. JI–Civil 2500 at 2 (1993). Furthermore, the U.S. Supreme Court has concluded that there is no "wholesale defamation exemption [under the First Amendment] for anything that might be labeled 'opinion'." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990).

Based on this precedent, and viewing the complaint in the light most favorable to the plaintiffs, the court cannot conclude that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. The motion to dismiss is denied with respect to defendants' assertion that the articles at issue contain statements of opinion.

## LABOR DISPUTE

The motion to dismiss must also be denied with respect to the defendants' argument that the articles are not actionable as opinion and rhetorical hyperbole in the context of a labor dispute between Briggs & Stratton and its Milwaukee employees.

In *Letter Carriers v. Austin*, 418 U.S. 264, 284–86, 94 S.Ct. 2770, 2781–82, 41 L.Ed.2d 745 (1974), the U.S. Supreme Court reemphasized the broad protection which union organizing speech deserves. In *Austin*, the union published a "List of Scabs" in its newsletter, together with a pejorative definition of the term "scab". Some of the named non-union members brought libel actions against the union.

The Court, relying on *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), concluded that federal labor law prohibits state libel actions based on defamatory statements made in labor disputes, unless the statements were published with knowledge of their falsity or with reckless disregard for their truth. "[O]ne of the primary reasons for the law's protection of union speech is to insure that union organizers are free to try peacefully to persuade other employees to join the union without inhibition or restraint.... Vigorous exercise of this right to persuade other employees to join must not be stifled by the threat of liability for the overenthusiastic use of rhetoric or the innocent mistake of fact." *Austin*, 418 U.S. at 277–79, 94 S.Ct. at 2777–79.

■ The defendants' argument that the statements at issue are not defamatory because they were made in the context of a labor dispute is misplaced. Unlike the cases cited by the defendants, this is not a lawsuit between union representatives and management, or between union and non-union members. Thus, this court simply cannot conclude that *Austin* and *Linn* extend protection to third parties unrelated to a purported labor dispute.

■ On the other hand, even if the statements were made in the context of a labor dispute and *Austin* protects unrelated third parties, the court could still not find that the complaint should be dismissed. State libel and slander actions may be maintained within the context of a labor dispute if the defamatory publication is shown by clear and convincing evidence to have been made with knowledge that it was false or with reckless disregard for its truth or falsity. *Austin*, 418 U.S. at 281, 94 S.Ct. at 2779–80. Paragraph 12 of the plaintiffs' complaint expressly alleges that "[t]he false and defamatory statements ... were intentionally published by the defendants with knowledge of the falsity or a reckless disregard for the truth." Consequently, dismissal of the complaint on the basis that the allegedly defamatory statements were made in the context of a labor dispute is inappropriate.

## ELEMENTS OF DEFAMATION

The defendants contend that the plaintiffs cannot establish the common law elements of defamation. They argue that the plaintiffs have challenged some statements that do not concern them, others that could not diminish their reputation, and some that are substantially true.

■ Wisconsin has adopted the test for defamation set forth in the Restatement. The Restatement provides that "[a] communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977). Furthermore, "[i]n determining whether the language is defamatory, the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Tatur v. Solsrud*, 174 Wis.2d 735, 498 N.W.2d 232 (1993).

■ The defendants assert that the plaintiffs challenge several statements which do not concern them, either expressly or by reasonable implication. For instance, the articles make general statements that "[t]he basis of our social and moral problems is not having family-supporting jobs" or that "Milwaukee now lays claim to one of the worst wage gulfs between blacks and whites nationwide". Although on their face these statements do not appear to involve the plaintiffs, Wisconsin law is clear that the statements cannot be taken out of context. When viewing the complaint, and the articles attached to it, in the light most favorable to the plaintiffs, the court cannot conclude that on some level these statements were not attributed to the plaintiffs' actions.

■ The defendants further contend that the complaint relies on some statements which are not defamatory, such as mention of the individual plaintiffs' religious affiliations, where the plaintiffs attended college, and Archbishop Weakland's refusal to comment on the articles. The court agrees these

**1200**

statements are not defamatory; the statements could not harm the reputations of the plaintiffs, lower them in the estimation of the community, or deter third persons from associating or dealing with them.

Finally, the defendants, citing *Waldo v. Journal Co.*, 45 Wis.2d 203, 209–10, 172 N.W.2d 680 (1969), contend that many of the statements are not defamatory because they are statements of opinion regarding the motives and ethics of those involved in a public controversy. The court cannot conclude that *Waldo v. Journal Co.* supports that proposition. If anything, *Waldo*, decided prior to *Milkovich*, appears to stand for the proposition that an opinion cannot be defamatory. Hence, dismissal on that basis is inappropriate.

### INVASION OF PRIVACY

Finally, the defendants contend that the plaintiffs' invasion of privacy claim does not state a claim for which relief can be granted under Wis. Stat. § 895.50(2)(c), which provides:

(2) In this section, "invasion of privacy" means any of the following:

(c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

The defendants argue that disclosure of an individual plaintiff's membership in the Catholic Church cannot violate this statute as a matter of law. Moreover, they submit that an individual's religious affiliation is public by its very nature, and disclosure of a person's religious affiliation is not a private matter which would be offensive to a reasonable person. *See Zinda v. Louisiana Pacific Corporation*, 149 Wis.2d 913, 440 N.W.2d 548, 555 (1989) ("Nor can one complain when publicity is given to matters which a person leaves open to the public eye. The law is not for the protection of the hypersensi-

tive...."). Furthermore, the defendants argue that the plaintiffs cannot prove that the defendants acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed.

The motion to dismiss will be granted with respect to this claim. Publication of a person's religious affiliation, standing alone, is not so private that it would offend a reasonable person. Accordingly,

IT IS ORDERED that the defendant's Motion to Dismiss (Doc. # 4) is granted with respect to the plaintiffs' invasion of privacy claim.

IT IS FURTHER ORDERED that the Motion to Dismiss is granted with respect to the statements addressing the individual plaintiffs' religious affiliations, where the plaintiffs attended college, and Archbishop Weakland's refusal to comment on the articles.

IT IS FURTHER ORDERED that the plaintiffs may file an amended complaint within 10 days of this order.

IT IS FURTHER ORDERED that in all other respects the Motion to Dismiss is denied.